ESTATE OF PROCTOR D. RENSENHOUSE, DECEASED, THE MICHIGAN TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57683.    Filed January 23, 1959.

*Irving Rothholtz, Esq.*, for the petitioner.
*J. Bruce Donaldson, Esq.*, for the respondent.

### SUPPLEMENTAL OPINION.

KERN, *Judge:* This case (in which our original Findings of Fact and Opinion are reported at 27 T.C. 107) is again before us pursuant to the mandate of the United States Court of Appeals for the Sixth Circuit to which was attached the following order (as amended):

The above cause coming on to be heard upon the record, the briefs of the parties, and the arguments of counsel in open court, and it appearing that petitioning executor claimed a marital deduction for a widow's allowance under Section 812(e) of the Internal Revenue Code of 1939, and that the Tax Court denied such claim on the ground that the widow's allowance did not constitute property passing from the decedent, as defined in Section 812(e)(3); and it further appearing that the grounds upon which the Tax Court decided the case have been abandoned by the Treasury Department and by present counsel for the Commissioner on this appeal; and it appearing that the single and controlling issue, now presented to the court, is whether the widow's allowance in question was a "terminable interest" within the meaning of Section 812(e)(1)(B) of the Internal Revenue Code of 1939, as amended; and it appearing that respondent contends that it is a terminable interest because it does not vest until after a petition has been filed for such allowance, and, further, that the allowance of the deduction depends on whether the widow received an indefeasible interest in the estate of her husband when he died; and it appearing that petitioner contends that such allowance is an indefeasible, vested right under the law of Michigan, relying upon

*King* v. *Wiseman*, 147 F. Supp. 156; and it further appearing that petitioner contends that such interest qualifies for the marital deduction without regard to whether the allowance vests or not, since Congress did not intend the terminable interest rule to be applicable to a widow's allowance; and it further appearing that the Tax Court has not passed upon these contentions of petitioner; and the court being duly advised,

Now, Therefore, It Is Ordered, Adjudged, and Decreed That the case be and is hereby remanded to the Tax Court for its further consideration and for its decisions on the issue whether such allowance constituted a terminable interest within the meaning of Section 812(e)(1)(B) of the Internal Revenue Code of 1939, as amended, and whether the terminable interest rule is applicable to a widow's allowance, under the statute.

It is apparent that respondent has abandoned the position originally taken by him in this proceeding with regard to the question of whether a widow's allowance is an interest in property passing from the decedent within the meaning of section 812(e)(3), I.R.C. 1939 (see 27 T.C. 107, 113), and has now reverted to the position stated by him in Revenue Ruling 83, 1953–1 C.B. 395, which reads as follows:

Advice is requested whether amounts allowed and paid pursuant to State law for the support of a surviving spouse during the period of settlement of the estate of the deceased spouse qualifies as a marital deduction for estate tax purposes under section 812(e)(1)(A) of the Internal Revenue Code.

Under the general rule of subparagraph (A) of section 812(e)(1) of the Code, the marital deduction will be allowed with respect to any interest in property included in the gross estate which passes from a decedent to his surviving spouse as absolute owner. In order to qualify under this subparagraph, any right of a widow to an allowance in her husband's estate must be a vested right of property which is not terminated by her death or other contingency. Therefore, if a widow's allowance for the full period of settlement of the estate is such that the allowance, or any unpaid balance thereof, will survive as an asset of her estate in case she dies at any time following the decedent's death, the interest thus taken by the widow would clearly constitute a deductible interest under section 812(e)(1)(A) of the Code. Whether any interest thus taken by a widow satisfies the statutory requirements in this respect is to be determined in the light of the applicable provisions of the State statutes, as interpreted by the local courts.

There are cases, however, where it appears that the provisions of State statutes providing for allowances for support during the period of settlement of an estate do not confer upon the surviving spouse of a decedent any vested indefeasible right of property which would constitute a deductible interest under section 812(e) of the Code. In many States local courts have held that such allowances, or any rights thereto, terminate *ipso facto* upon remarriage and that death also terminates any rights to subsequent allowances. Under such circumstances, the interests passing to the surviving spouses of decedents in the forms of allowances, made for their support, pursuant to local law, amount to no more than annuities payable out of the assets of the estates during the periods of settlement or until prior death or remarriage of the surviving spouses and, as such, constitute terminable interests within the meaning of section 812(e)(1),(B) oft he Code, no portion of the values of which qualify for the marital deduction.

In view of the foregoing, it is held that the interest in an estate which passes to a surviving spouse pursuant to State law in the form of an allowance for support during the period of settlement of the deceased spouse's estate must constitute a vested right of property such as will, in the event of her death as of any moment or time following the decedent's death, survive as an asset of her estate, in order to qualify under section 812(e)(1)(A) of the Internal Revenue Code for the estate tax marital deduction.

The facts in the instant case are not in dispute. They are fully set out in 27 T.C. 108, 109. As stated therein, decedent died on May 24, 1952. By will he devised his residuary estate to a trust, the corpus of which was distributable to his children upon the death of his widow. On October 29, 1952, the appropriate State court of Michigan entered an order upon the petition of the widow directing that "an allowance in the sum of $10,000.00 per year to be paid at the rate of $833.33 per month be and the same is hereby granted out of the estate of said deceased for the support and maintenance of the widow for one year from the date of the death of said deceased." On August 3, 1953, the executor of decedent's estate paid to the widow a lump sum of $10,000 in satisfaction of the order of the State court. The widow died in 1954.

Respondent on brief states that he "accepts the view that the critical consideration upon which the right to the deduction [of the widow's allowance] depends is whether the widow's interest was a terminable one within the meaning of Section 812(e)(1)(B)" of the Internal Revenue Code of 1939,[1] and further states the question to be decided as "whether a widow's allowance in the State of Michigan constituted a terminable interest under Section 812(e)(1)(B) of the Internal Revenue Code of 1939, as amended, and whether the terminable interest rule is applicable to a widow's allowance, under the statute." As we understand his present argument, it is to the effect: (1) That since a petition by the widow is a prerequisite to the granting of a widow's allowance since the widow may fail or refuse to make

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

\* \* \* \* \* \* \*

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under clauses (i) and (ii))—

such a petition and since an order of the State court is necessary to fix the allowance in final form, there may be a "failure of an event or contingency to occur," upon which the "interest passing to the surviving spouse [the widow's allowance] will * * * fail," and (2) since the death of the widow after the entry of an order granting a widow's allowance would abate such allowance for the period after her death, and the remarriage of the widow would terminate her right to such allowance for the period following remarriage, there may be "the occurrence of an event or contingency," upon which the "interest passing to the surviving spouse [the widow's allowance] will terminate."

In determining whether the widow's allowance here involved constituted a "terminable interest" within the meaning of section 812(e)(1)(B) we must look at the facts and the rights of the parties as they existed at the time of decedent's death. *Estate of Edward A. Cunha,* 30 T.C. 812. See also *Estate of Wallace S. Howell,* 28 T.C. 1193, 1195; *Shedd's Estate* v. *Commissioner,* 237 F. 2d 345, affirming 23 T.C. 41.

As of the decedent's death his widow was entitled to a widow's allowance for 1 year and her *right* to this allowance was not lost by reason of her subsequent death or remarriage. *Bacon* v. *Perkins,* 100 Mich. 183, 58 N.W. 835; *Isabell* v. *Black,* 259 Mich. 100, 242 N.W. 853. Of course the widow (or her representative) had to ask for the enforcement of this right or interest by petition to the appropriate Probate Court, and the Probate Court by its order would render the right enforcible. However, we are unable to agree with respondent that the necessity of invoking the proper legal procedures for the enforcement of a right is a contingency to the existence of the right (i.e., a "failure of an event or contingency to occur" upon which the "interest passing to the surviving spouse will * * * fail") within the meaning of the statute. The invocation of the proper legal procedure is required with regard to widow's allowances in most jurisdictions, and if this were a relevant factor in considering the applicability of section 812(e)(1)(B) it would almost universally preclude the allowance as a marital deduction of "amounts expended in accordance with the local law for support of the surviving spouse of the decedent." It was not considered a relevant factor by the respondent in Revenue Ruling 83, 1953–1 C.B. 395, quoted above. The clear inference from the congressional reports referred to in our original opinion (see 1950–2 C.B. 478, 576) is that Congress assumed that in many cases at least a widow's allowance would be allowable as a marital deduction. This congressional assumption (even though erroneous under our interpretation of section 812(e)(3); see 27 T.C. 107) negatives any congressional intent that the necessity for the widow to file a petition asking

for the allowance or the discretion and power of the local probate judge with regard to fixing and modifying the amount of such allowance should be relevant factors to be considered under section 812 (e)(1)(B). This view is implicit in our decision in *Estate of Gertrude P. Barrett*, 22 T.C. 606. In that case decedent's husband contended that decedent's will was invalid and asserted a claim to a one-third interest in decedent's personal property as provided by State statute. A compromise was effected whereby the husband agreed to renounce his contention and settle his claim for $10,250 paid to him by the executor with the approval of the Probate Court. It was held that this amount was a marital deduction under the provisions of section 812(e). In that case it is obvious that the enforcement of the husband's rights required the invocation of proper legal procedures and the extent of the rights (i.e., the dollar amount of his interest) depended upon the action of officers of the Probate Court subject to the court's approval. Yet we allowed the amount paid to the husband as a marital deduction. The instant case is a stronger one for the taxpayer.

The difficult question is whether the widow's right to a support allowance for 1 year, existing under the law of Michigan as of the decedent's death was subject as of that time to be terminated by her death or remarriage within the year so that the occurrence of either event must be considered "the occurrence of an event or contingency" upon which the "interest [represented by the widow's allowance] will terminate."

In *Estate of Edward A. Cunha, supra*, a case involving the law of California, the answer to this question was comparatively easy since in that case the award was for monthly sums and we were able to point out that petitioner in that case conceded that the effect of *In re Blair's Estate*, 42 Cal. 2d 728, 269 P. 2d 612, was that a widow's allowance in that State terminates or abates upon her death or remarriage. See also *Estate of Hamilton*, 66 Cal. 576, 6 Pac. 493.

However, in the instant case the reasoning of the Michigan courts in the two Michigan cases above cited and in others would indicate that the law of Michigan on this point is not like the law of California. See also McAvinchey, Michigan Probate Practice sec. 120.

The general rule on this question is stated by 3 Schouler, Wills, Executors and Administrators (6th ed.) sec. 2655, as follows:

Usually where, at the death of a widow, portions of an amount allowed to her as a widow's allowance remain unpaid, such amounts may be recovered by her representative [citing *In re Rice's Estate*, 146 Iowa 48, 124 N.W. 792]. And effect of her death, after a decree unappealed from has established her right, absolutely and conclusively, to an allowance, appears to cause this right of property to pass to her personal representatives [citing *Drew* v. *Gordon*, 13 Allen (Mass.) 120].

The difficulty of formulating a general rule applicable to all jurisdictions is indicated by a consideration of 144 A.L.R. 264 and the cases cited and discussed in the annotation, at 270–286. However, we are satisfied that there is no such general rule contra to the contention of petitioner as to the law of Michigan on this subject as to justify us in holding that the burden of proving the law of Michigan as an exception to a general rule is on petitioner under the doctrine of *Helvering* v. *Fitch*, 309 U.S. 149. See *Helvering* v. *Stuart*, 317 U.S. 154. We have before us all of the precedents of that State which counsel have presented on brief and our own research has found available. It must be our responsibility, without relying on any rule of burden of proof, to determine what the law of Michigan is on this question.

We limit the question, of course, to the precise facts here involved. It should be pointed out that in this case, unlike the *Cunha* case, the award was in one lump sum covering the period of a year ("an allowance in the sum of $10,000 per year"), even though the order permitted the award "to be paid at the rate of $833.33 per month." Thus by the terms of the order the allowance "granted * * * for the support and maintenance of the widow for one year from the date of the death of * * * deceased" was the one sum of $10,000, and not an allowance of monthly payments. As to the term for which the award was granted, it was for 1 year after the death of decedent and as to such a term the widow's right to an allowance was "an absolute vested right." See *Bacon* v. *Perkins, supra*.

It is our opinion that under the law of Michigan a widow's allowance granted by the Michigan Probate Court for 1 year in a lump sum does not terminate or abate upon the death or remarriage of the widow prior to its payment.

We conclude that under the facts of the instant case (and limiting strictly our decision to these facts) the widow's allowance here in question did not constitute a terminable interest within the meaning of section 812(e)(1)(B) of the Internal Revenue Code of 1939, as amended.

We reach this conclusion in conformity with the mandate of the Court of Appeals, above quoted, and not because we have in any way receded from the views expressed in our original opinion herein, to the effect that the widow's allowance here involved was not an interest in property passing from the decedent as defined in section 812(e)(3).

The Court of Appeals by its order which is quoted above calls for our further consideration and decision "on the issue whether such allowance constituted a terminable interest within the meaning of Section 812(e)(1)(B) of the Internal Revenue Code of 1939, as amended, and whether the terminable interest rule is applicable to a widow's allowance, under the statute." In deciding the first ques-

tion posed by the Court of Appeals ("whether such allowance constituted a terminable interest within the meaning of Section 812(e)(1)(B)"), it is obvious that an assumption must be made that "the terminable interest rule is applicable to a widow's allowance." We have considered and decided that even though "the terminable interest rule is applicable to a widow's allowance," the widow's allowance here in question under the peculiar facts of this case did not constitute a terminable interest within the meaning of "the terminable interest rule." Having thus decided the first question stated by the Court of Appeals in a way which will dispose of the case in petitioner's favor, even on an assumption with regard to the second question stated which is contrary to petitioner's position any comments by us on the second question may well be characterized as dicta. However, in conformity with the order of the Court of Appeals, we express the opinion that "the terminable interest rule is applicable to a widow's allowance."

Petitioner's contention on this question is that the two conditions to the application of "the terminable interest rule" (section 812(e)(1)(B)), which are set out in subsections (i) and (ii) of section 812(e)(1)(B), are not fulfilled in cases involving a widow's allowance since upon the termination of such an allowance the interest therein does not pass to and may not be possessed or enjoyed by any person other than the surviving spouse *directly* but the interest in such property will revert to the decedent's estate and pass through that estate (subject to tax) to such other person or persons.

Petitioner's argument on this question is ingenious, but it is not supported by the language of the statute nor by any legislative history. In theory it is incompatible with administrative interpretation, Rev. Rul. 56–26, 1956–1 C.B. 447. In our opinion it is without merit.

Reviewed by the Court.

*Decision will be entered of no deficiency.*

---

PIERCE, *J.*, concurring in part and dissenting in part.

Because of the importance of this case in the administration of the Federal estate tax, I believe it appropriate to set forth my views, not only with respect to the final result reached by the Court in this particular case, but also with respect to the answers made by the Court to the specific questions presented in the mandate of the Court of Appeals for the Sixth Circuit. Since this is the first case involving the qualification of widows' awards for the estate tax marital deduction, which has received consideration by any of the Courts of Appeals, and since in the proceedings above the Treasury Department and its counsel made important concessions which caused the case to be remanded for

decision on two crucial questions, I believe that the conclusions and reasoning employed by this Court in arriving at its answers to said questions have a bearing on the estate tax treatment of widows' awards, generally, that goes far beyond their application in the instant case.

I concur in the Court's holding that the particular widow's award here involved does not constitute a "terminable interest" within the meaning of section 812(e)(1)(B) of the 1939 Code; and I join in the holding that the decision herein should be for the petitioner. I respectfully dissent, however, from the Court's answer to the second question presented by the Court of Appeals—that "the terminable interest rule [contained in subparagraph (B) of section 812(e)(1)] is applicable to a widow's allowance." And I also am impelled to disagree with the conclusions expressed and applied by the Court in arriving at its answer to the first question of the Court of Appeals. These conclusions are, in substance: That the controlling test for determining whether a particular widow's award qualifies for the estate tax marital deduction, is whether the widow's right to the particular amounts actually received by her had *vested* in her *at the time of her husband's death*, under the *local law* as interpreted by the *local courts*—so as to preclude any possibility that payment of such amounts might have been stopped or discontinued by the local court, in the event she had died or remarried immediately after her husband's death.

Such interpretation and application of section 812(e) is, in my view, erroneous and out of harmony with the overall scheme of the marital deduction provisions of the Code, as indicated by their own terms. Also, the so-called *vesting test* which the Court adopted and applied in determining whether the widow's award qualified, is neither mentioned in the Code nor specifically authorized by the terms thereof; and I find no warrant for inferring that Congress intended the operation of the Federal statute to be dependent on State law. Such test, because of the paucity or indefiniteness of local court decisions in many State jurisdictions (see statement in the Court's opinion, as to the difficulty of formulating any general rule as to vesting), would complicate the administration of the estate tax law, by making it difficult or even impossible in many instances for taxpayers, their counsel, and the administrative officials, to determine with reasonable certainty whether a particular widow's award qualifies—thus stimulating litigation and hindering the prompt settlement of estates. And further, such test, because of the differing views expressed by local courts in their consideration of similar facts and similar State statutes, would produce diametrically opposite results in cases arising in different States (compare, for example, the result reached in the instant case involving a Michigan estate, with that reached by this Court in a case

involving a California estate, *Estate of Edward A. Cunha*, 30 T.C. 812, pending on appeal to C.A. 9) ; and thus it would tend to defeat the objective of attaining a uniform application of the estate tax statutes to a nationwide scheme of taxation.

In answering the questions presented by the Court of Appeals, I would have given effect to the following considerations:

(1) The meaning and application of Federal tax statutes is a Federal question, which should be resolved by application of settled principles relating to the construction of Federal tax statutes.

In *Burnet* v. *Harmel*, 287 U.S. 103, 110, the Supreme Court, in dealing with the meaning and application of a Federal income tax statute, said:

> Here we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation. * * * State law may control only when the operation of the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. * * *

See also *Lyeth* v. *Hoey*, 305 U.S. 188, 193–194, in which the Supreme Court said:

> The question as to the construction of the exemption in the federal statute is not determined by local law. We are not concerned with the peculiarities and special incidences of state taxes or with the policies they reflect [relative to the administration of decedents' estates]. * * *

I think that such principles are applicable here.

(2) Section 812(e) provides a comprehensive plan for dealing with interests which commonly would be *considered as passing* from a decedent to his surviving spouse; and it provides its own definition of an interest *passing*, which is broad enough to cover all the interests included in determining the value of the decedent's gross estate under the various subsections of section 811 of the Code.

When Congress first established the estate tax marital deduction in 1948, the basic scheme was to permit the spouse who died first, to pass to his surviving spouse free from the burden of estate tax, up to one-half of his adjusted gross estate; provided that the interest so passed was of such character that it would qualify for taxation in the estate of the surviving spouse. See *Estate of Edward F. Pipe*, 23 T.C. 99, 104, affd. 241 F. 2d 210, certiorari denied 355 U.S. 814. This scheme was made effective by adding to section 812 of the 1939 Code, a new subsection (e) which included the following basic provision, and the following overall limitation:

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

(A) In General.—An amount equal to the value of any interest in property which *passes* or *has passed* from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. [Emphasis supplied.]

\* \* \* \* \* \* \*

(H) Limitation On Aggregate Of Deductions.—The aggregate amount of the deductions allowed under this paragraph (computed without regard to this subparagraph) shall not exceed 50 per centum of the value of the adjusted gross estate, as defined in paragraph (2).

Included also in section 812(e) are several other paragraphs and subparagraphs (including subparagraph (B) here involved) which provide special limitations, exceptions and definitions, that serve to make effective the scheme of the subsection, and also provide for such latitude in its application as will make its operation both practical and certain. Such latitude is provided, not only by the terms "passes or has passed" contained in subparagraph (A), but also by the definition contained in paragraph (3) of section 812(e), which states that, "For the purposes of this subsection \* \* \* [certain specified interests] in property *shall be considered as passing* from the decedent." (Emphasis supplied). Among the interests that shall be so *considered as passing* is an interest "inherited" (sec. 812(e)(3)(B)); and, by reason of the above-mentioned concessions made by the Treasury Department in the instant case when it was before the Court of Appeals, the widow's award here involved which was actually paid out of the decedent's gross estate to the widow, is to be regarded as an interest "inherited." Still other interests *considered as passing* from the decedent include: Statutory interests assigned, in certain States, in lieu of dower or curtesy (sec. 812(e)(3)(C)); a cash amount received in settlement of a will contest (*Estate of Gertrude P. Barrett*, 22 T.C. 606); and the limited statutory interest in an estate, which a widow may have elected to take against her husband's will (S. Rept. No. 1013, 80th Cong., 2d Sess., 1948–1 C.B. 285, 334).

In a statute of such fine mesh, I find no room for the inclusion of tests based on the peculiarities and policies of differing State laws, which are not specifically authorized.

(3) The Court's holdings and conclusions as to the application and effect of subparagraph (B) fail, in my view, to give recognition to the limited scope of said subparagraph, as indicated by its terms. The opening sentence of this subparagraph reads as follows:

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, *such interest passing to the surviving spouse will terminate or fail,* no deduction shall be allowed with respect to such interest—

    (i)  *if* \* \* \* ; and
    (ii)  *if* \* \* \* ;
and no deduction shall be allowed  \* \* \*
    (iii)  *if* \* \* \*.  [Emphasis supplied.]

It will be observed that, in order for the marital deduction to be disallowed under this subparagraph, the conditions of clauses (i) and (ii), or of clause (iii), must be met.  None of these clauses has the remotest relation to a widow's award; and hence, the condition precedent to the application of said subparagraph to such an award, is not met.

Moreover, it is obvious from the context of subparagraph (B), that the "terminable interests" intended to be controlled thereby, are interests passing to a surviving spouse, which are not of such character that they would qualify for taxation in the surviving spouse's estate —as for example, a life estate, or an estate for a term of years, or a contingent interest that is subject to curtailment or extinguishment, and to which clauses (i) and (ii) or (iii) would pertain.  The subparagraph has, in my view, no application whatever to interests which pass to the widow, *absolutely* for her sole use and consumption.

Widows' awards simply do not fit into the pattern of subparagraph (B).  They are allowances which an appropriate local court, acting under an empowering statute, may authorize the executor or administrator to expend and pay out of the decedent's gross estate for the temporary support of the surviving widow.  Except in some States where a minimum allowance is provided, the local court usually has discretionary power to fix the amount or amounts to be paid, either in a single lump sum or in a series of monthly lump sums; and in addition, it has discretionary power to determine how long the payments shall run—as for example, until the widow's interest in the estate is assigned to her; or for 1 year; or until further order of the court.  Because such allowances are for the relief of the widow only, and because on the other hand they may operate against the interests of other persons, the local court usually has discretionary power also to stop the payments, or to increase or decrease their amounts, so as to give effect to their purpose.  Neither the empowering local statute nor the discretionary orders of the local court can, in any realistic sense, be regarded as creating interests in property which pass to the widow prior to the time or times when the particular support payments are actually or constructively received by her.  There is no corpus represented by the award, in which the widow has only a limited or contingent use; there are no remainders; and there is no reverter.

I would have held that subparagraph (B) is in no way applicable to widows' awards.

(4) There is legislative history which indicates clearly an intention of Congress that support allowances actually paid to a widow out of her husband's gross estate, should qualify for the estate tax marital deduction.

Prior to the creation of the marital deduction in 1948, and continuing until 1950, amounts paid to a surviving spouse as a widow's award, were, to the extent "reasonably required and actually expended for the support during the settlement of the estate," expressly deductible for estate tax purposes, under section 812(b)(5) of the 1939 Code. In 1950, however, such deduction was eliminated from the Code; and in explanation of such action, the Senate Finance Committee made the following statements (S. Rept. No. 2375, 81st Cong., 2d Sess., 1950–2 C.B. 483, 525, 576):

This deduction [allowed by section 812(b)(5)] is inconsistent with the concept of the estate tax as a tax on all properties transferred at death. In practice it has discriminated in favor of estates located in States which authorize liberal allowances for the support of dependents, and it has probably also tended to delay the settlement of estates.

Section 502 of your committee's bill repeals this particular feature of the estate tax law. * * *

*    *    *    *    *    *    *

Under existing law amounts expended in accordance with the local law for support of the surviving spouse of the decedent are, by reason of their deductibility under section 812(b), not allowable as a marital deduction under section 812(e) of the Code. However, as a result of the amendment made by this section [section 502 of the Revenue Act of 1950] *such amounts heretofore deductible under section 812(b) will be allowable as a marital deduction* subject to the conditions and limitations of section 812(e). [Emphasis supplied.]

The last of the above-quoted statements appears also, in identical words, in the report of the Ways and Means Committee of the House (H. Rept. No. 2319, 81st Cong., 2d Sess., 1950–2 C.B. 380, 478).

Thus it will be seen, that the intended effect of the repeal of said section 812(b)(5) was merely to shift the deduction for widows' awards from one subsection of section 812 to another; and thereby place the allowances under the 50 per cent limitation on aggregate marital deductions, which is provided by section 812(e)(1)(H) of the 1939 Code.

In view of the above statements contained in the report of the Senate Finance Committee, to the effect that such action was motivated, at least in part, by a desire to eliminate discrimination among the States and to prevent delay in the settlement of estates, it cannot reasonably be inferred that Congress intended that the qualification of widows' awards for the marital deduction, should be subjected to the uncertainties and variations of local law.

I believe that the intention of Congress, as disclosed by the above quotations from the committee reports, should be given effect in respect of widows' support allowances, generally.