Louise M. QUIVEY and Robert G. Simmons, Jr., Co-Executors of the Estate of M. B. Quivey, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 0767.

United States District Court
D. Nebraska.

Sept. 15, 1959.

**434**

Robert G. Simmons, Jr., Scottsbluff, Neb., for plaintiffs.

Thomas J. Skutt, Asst. U. S. Atty., Omaha, Neb., Herbert Awe, Department of Justice, Washington, D. C., for defendant.

VAN PELT, District Judge.

This matter is before the court on a stipulation of the facts and the oral and written arguments of counsel. The stipulated issue is whether the allowance to the surviving spouse (hereinafter referred to for convenience as the widow's allowance) authorized by the County Court of Scotts Bluff County of the State of Nebraska under § 30–229 and § 30–103 of the Nebraska Revised Statutes 1943 (Reissue 1956) is deductible as a marital deduction under Section 2056, Internal Revenue Code (26 U.S.C.A. § 2056). More precisely, the question is as to whether or not this allowance constitutes a "terminable interest" within the meaning of § 2056(b) (1) of the I.R.C.

The facts as stipulated are as follows: Louise M. Quivey was married to the decedent, Maurice B. Quivey, and was his surviving spouse. Decedent died testate, a resident of Scotts Bluff County, Nebraska, on January 24, 1955. By the terms of his will, specific bequests were made to his surviving spouse and daughter and the residue of his estate was left to the Bay State Foundation, a charitable corporation. On March 11, 1955, Louise M. Quivey made application to the County Court of Scotts Bluff County for a widow's allowance from the assets of decedent's estate. In accordance with the Nebraska statutes, §§ 30–229 and 30–103, the County Court ordered an allowance to be paid the surviving spouse "in the sum of $2,000.00 per month, said allowance not to exceed a period of 12 months * * *." Pursuant to this order, the executors of the estate, the taxpayers-petitioners in this matter, paid to Louise M. Quivey, in monthly installments, the total sum of $24,000. In computing federal estate taxes, the taxpayers sought to deduct, as a portion of the marital deduction, the amount of these sums paid as a widow's allowance. The deduction was disallowed by the Internal Revenue Service on the ground that the widow's allowance, being a "terminable interest", does not qualify for the marital deduction. Accordingly, a deficiency in the amount of $6,041.36 was assessed against the estate. The taxpayers paid the deficiency, and on June 27, 1958, filed a timely claim for refund. Upon rejection of the claim, the taxpayers instituted this action.

Section 2056 of the Internal Revenue Code (26 U.S.C.A. § 2056) provides for the following:

"(a) Allowance of marital deduction. For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his

surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"(b) Limitation in the case of life estate or other terminable interest.

"(1) General rule.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

"(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

"(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * *"

This is a case of first impression under the 1954 Internal Revenue Code, although the matter has previously been litigated under the substantially similar provision of the 1939 Code as amended (§ 812 (e)). Molner v. United States, D.C.N.D. Ill., May 22, 1959, 175 F.Supp. 271; In re Estate of Rensenhouse, 27 T.C. 107, remanded 6 Cir., 1958, 252 F.2d 566, redetermined Jan. 23, 1959, 31 T.C. 818; Estate of Cunha, 1958, 30 T.C. 812; King v. Wiseman, D.C.W.D.Okl.1956, 147 F.Supp. 156.

■ The issue of whether the widow's allowance here is a "terminable interest" within the meaning of § 2056 has been subdivided into two questions: (1) Is the terminable interest rule (§ 2056(b) (1)) applicable to the Nebraska widow's allowance? (2) If the rule is applicable, is the widow's allowance in Nebraska an interest in property that will fail or terminate upon the occurrence of an event or contingency? In re Estate of Rensenhouse, supra. This first question has been answered in the affirmative for Michigan by the Tax Court in In re Estate of Rensenhouse, supra, by way of dicta; by implication in the Commissioner's rulings (Rev.Rul. 83, 1953–1 C.B. 395 and Rev.Rul. 56–26, 1956–1 C.B. 447) and the Tax Court in Estate of Cunha, supra; and was avoided in Molner v. United States, supra. It was answered in the negative in a concurring in part and dissenting in part opinion in In re Estate of Rensenhouse, supra. Except for the 1956 Commissioner's ruling, these answers were given in regard to the terminable interest rule under the 1939 Code as amended. This Court feels that the question should be re-examined, especially in light of the 1954 Internal Revenue Code, and, in doing so, shall dispose of both questions.

Before proceeding to that question, it should be noted that neither the government nor counsel in this case advances the argument that the widow's allowance is an interest in property that does not "pass" to the surviving spouse within the meaning of § 2056. In re Estate of Rensenhouse, supra. The government confines the issue to whether the widow's allowance is a terminable interest within the meaning of § 2056(b) (1) and allows the case to turn solely on that question.

Turning again to the question of whether the terminable interest rule is applicable to widow's allowances, an examination of the legislative history sheds some light on the problem. Prior to 1948, there existed no provision in the I.R.C. for a marital deduction. However, Section 812(b) (5) of the 1939 Code provided, for purposes of estate taxes, a deduction from the gross estate of amounts "reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent," as were allowed by the state under which the estate was being administered. 53 Stat. 123. In 1948, with the above provision still in effect, Subsection (e) of Section 812 was added providing for a marital deduction. The purpose of the marital deduction

was considered to be an equalizer of estate taxes in community property states and non-community property states. The terminable interest rule was added to limit the application of the marital deduction to those assets passing to the surviving spouse in which she has been vested an interest similar to the interest in one-half the property vested in a spouse in community property states. The Finance Committee report of the Senate stated:

"In the preceding paragraphs it has been stated that the interest in property must pass outright to the surviving or donee spouse to qualify for the marital deduction. This is intended to restrict the deduction to those cases where the decedent or donor passes to his spouse all of his interest in the property. This will equate the decedent in the common-law State with the decedent in the community-property State who cannot by his will effect in any way the surviving spouse's interest in the community property. Thus, a deduction will not be allowed under the amendments if the only interest given a spouse is in property in which the decedent or donor also gave an interest to someone else who may possess or enjoy the property after the donee spouse dies." Sen.Rept. No. 1013 (80th Cong., 2d Sess. 1948), 1948 U.S.Code Cong. Service, page 1163, at pages 1188, 1190.

The support allowance, deductible under § 812(b) (5), was not considered to "pass" to the surviving spouse within the meaning of § 812(e), and was not allowed as a marital deduction. See Supplementary Report to Sen.Rept. No. 1013, supra, U.S.Code Cong.Service 1948, page 1222.

In the Revenue Act of 1950, Section 812(b) (5) allowing straight deductions of allowances for dependents was repealed. The purpose of the repeal was, as stated, to make consistent the concept of the estate tax as a tax on all properties transferred at death, and to avoid the discrimination in favor of estates located in States which grant liberal allowances. Sen.Rept. No. 2375 (81st Cong., 2d Sess. 1950), 1950 U.S.Code Cong.Service, page 3053, at page 3112. In the detailed discussion of the bill by the Senate Report (Sen.Rept. No. 2375, supra, at page 3190) and in the House Report (House Rept. No. 2319, 81st Cong., 2d Sess., 1950 (1950–2 C.B. 380, at 478)), it was stated that these allowances, although no longer deductible under § 812(b) (5), would be deductible under the marital deduction, subject to the conditions and limitations of that section.

In 1954, upon revision of the entire Revenue Code, it was urged upon the House Committee that the terminable interest rule be made inapplicable to widow's allowances as the application of such by the Commissioner in Rev.Rul. 83, supra, was erroneous. Hearings before the House Committee on Ways & Means on Revenue Revision (83rd Cong., 1st Sess., 1953), Aug. 10 at p. 1610. The Committee and the House did insert a provision making the terminable interest rule inapplicable to widow's allowances to the extent of payments made within one year. Subsequent payments, however, were to continue subject to the rule. House Rept. No. 1337 (83d Cong., 2d Sess., 1954), 1954 U.S. Code Cong. & Adm.News, page 4119. The Senate rejected this provision, stating in their report, "Under present law many widows' allowances qualify for the marital deduction without regard to the time of payment. It is believed that the House bill might raise some question as to the treatment under the marital deduction of these widows' allowances to the extent not received within 1 year of the decedent's death." Sen.Rept. No. 1662 (83d Cong., 2d Sess., 1954), 1954 U.S.Code Cong. & Adm.News, page 4759. In the Conference Committee, the House receded from its position. The Conference Report explained that many of the allowances were allowable as a marital deduction without regard to time of payment, quoting the House Report in 1950 when the straight deduction of the allow-

ances was repealed, and continued that "the added complications of this section are largely unnecessary." Conf.Rept. on the Internal Revenue Code of 1954 (83d Cong., 2d Sess., 1954), 1954 U.S.Code Cong. & Adm.News, page 5280, at page 5336.

On August 10, 1959, the House Committee on Ways and Means in Report No. 818 to accompany H.R. 2573 reported out a bill providing that the marital deduction is to be available for estate tax purposes with respect to widow's allowances paid within 15 months from the date of decedent's death. After 15 months, the bill provides that present law as to this question is to be applicable. The purpose of the bill is, as stated, to "clarify the circumstances under which the marital deduction is to be available with respect to such awards * * *." The report also stated, although such is not directly controlling as to the legislative intent of the law here in question, as follows:

"Your committee believes that the extent to which the marital deduction is allowed with respect to these awards or allowances should be the same in all States during the usual period of the settlement of the estate, and should not turn on the technical questions of whether they are treated by local law as having 'passed' from the decedent or as being 'terminable interests.' "

Although the legislative history alone does not give any clear answer to the issue in question, certain conclusions may be drawn from it as to the intent of Congress which will serve as a further guide.

1. The marital deduction was intended as a method of equalizing estate taxes in community property and non-community property states.

2. The terminable interest rule was made an exception to the marital deduction with the intent that non-community property states would not be given a greater advantage than the community property states by means of allowing assets eligible for marital deduction to pass from the decedent or his estate through the widow to another person who has not paid good consideration without being subject to an estate tax.

3. Discrimination among the States as to estate tax advantages from widow's allowances because of local law variations was intended to be reduced, if not eliminated.

4. At least many widows' allowances were intended to be eligible for the marital deduction.

Proceeding to the statute and its wording to determine whether the terminable interest rule is applicable to widows' allowances, an examination of the rule as set out there shows that the rule is inapplicable unless the widow's interest terminates or fails and, in addition, an interest in the same property in which the widow holds an interest passes or has passed from the decedent to another person, and such other person may possess or enjoy any part of that property after the termination or failure of the widow's interest in the same. In order to determine whether the widow's interest terminates, or whether an interest in the same property has passed to another person, it is first necessary to determine what constitutes the "property" and what "interests" are held in such with regard to this matter before us. In the Senate Report of the Revenue Act of 1948, at the time of the introduction and acceptance of the marital deduction, these terms were explained as follows:

"The terms 'interest' and 'property,' as used in section 812(e) have separate and distinct meanings. The term 'property' is used in a comprehensive sense and includes all objects or rights which are susceptible of ownership. The term 'interest' refers to the extent of ownership, that is, to the estate or the quality and quantum of ownership by the surviving spouse or other person, of particular property. For example, if the surviving spouse is specifically devised an estate for her life in a farm, the 'interest' passing

to her is the life estate, and the 'property' in which such interest exists is the farm. Generally the property in which any person is considered as having an interest is the property out of which, or the proceeds of which, such interest may be satisfied. Thus, in the case of a bequest, devise, or transfer of an interest which may be satisfied out of, or with the proceeds of, any property of the decedent's general estate or of a trust, the interest so bequeathed, devised, or transferred is an interest in any and all of such property. If the decedent's general estate or the trust consists of assets which are themselves interests in property (such as leases), the interest so bequeathed, devised, or transferred is an interest in such property." Sen. Rept. No. 1013 (80th Cong., 2d Sess., 1948), 1948 U.S.Code Cong.Serv. page 1225 (1948).

The tax regulations explain the following:

"In determining whether an interest in the same property passed from the decedent both to his surviving spouse and to some other person, a distinction is to be drawn between 'property', as such term is used in section 2056, and an 'interest in property'. The term 'property' refers to the underlying property in which various interests exist; each such interest is not for this purpose to be considered as 'property'." 1959 Fed.Tax Regs. § 20.2056(b)-1 (e) (2).

Although neither the Commissioner nor any court has defined what constitutes the "property" and the "interests" with regard to the widow's allowance, a perusal of the rulings indicates that the "property" involved was determined by taking the award of the local court and extending it to the maximum amount payable to the widow, assuming there would be no upward modification. This maximum extension provided a liquidated sum, which was considered the corpus or the "property" involved. The widow's

"interest" was then determined by local law—if she should die or remarry prior to receiving the full amount of this liquidated sum and the remainder would be continued to be paid to her or to her estate, then the widow's interest was considered non-terminable; if the remainder would not be paid to her or her estate on her death or remarriage, then her interest was considered terminable, and the allowance then considered ineligible for the marital deduction.

Were it not for the contrary Congressional intent, this Court might be inclined to hold that the "property" consists of any and all of the assets of decedent's estate, and the "interest" to be an inherently terminable personal right to an allowance from these assets for support and maintenance, thus denying the marital deduction in all cases of widow's allowances. This classification of the terms must be rejected because its results would be, as mentioned, contrary to the express intent of Congress. Similarly, the classifications of the terms "property" and "interest" by the Commissioner in cases of widow's allowances must be rejected because its results are contrary to the intent of Congress as to support allowances and contrary to the effect of the state statute providing for widow's allowances.

The statute vests in the surviving spouse an interest that must terminate. The widow is provided "such reasonable allowance * * * necessary for their [her] maintenance during the progress of the settlement of the estate, * * * which shall not be longer than one year after granting administration, nor for any time after the personal estate shall be assigned to the surviving husband or wife * * *." § 30–103, Neb.Rev.Stat. (Reissue 1956). The Scotts Bluff County Court ordered "that widow's allowance is hereby allowed to Louise M. Quivey in the sum of $2,000.00 per month, said allowance not to exceed a period of 12 months. * * *" The statute and the order vest in the widow not the right to $24,000, but the right to an allowance for maintenance out of the estate of de-

cedent. The statute vests in the widow her interest—the right to maintenance for a limited period; the county judge merely deems what is necessary per month. This personal right to maintenance out of the estate is inherently an interest that will terminate, the same as a life estate, whether the time of termination is death, one year, ten years, upon remarriage, or upon any contingency. The terminable interest rule speaks of an interest terminating or failing both upon the happening of a contingency and upon the lapse of time. The Nebraska statute allowing for a widow's allowance provides for the termination of the allowance at the end of one year or upon settlement of the estate, also possibly at death or remarriage. At any of these points of termination, the widow's interest terminates within the meaning of § 2056(b) (1).

■ It is still necessary to define "property" in order to determine whether the same property in which the widow has an interest may pass to another person. Property as being any and all of the assets of the estate of decedent has already been rejected as having results incompatible with the intent of Congress. So also must the Commissioner's view of "property" be rejected. In the view of this Court, the "property" consists of the assets actually paid to the widow out of the gross estate of the decedent, no more or no less. The widow's interest in the property paid as an allowance is complete and full, although her interest in the receipt of this allowance is limited in time. The widow's interest does not extend to any other property than that actually required and expended. The legislative history is in accord with this classification. Section 812 (b) (5) of the 1939 Code provided for the deduction of amounts *"actually expended* for the support during the settlement of the estate." (Emphasis supplied.) One of the intended effects of the repeal of this section was "to shift the deduction for widows' awards from one subsection of section 812 to another; and thereby place the allowances under the

50 per cent limitation on aggregate marital deductions." Concurring in part and dissenting in part opinion in Re Estate of Rensenhouse, supra, 31 T.C. at page 829. The "property" involved in § 812(b) (5) was the amount actually expended. In accordance with the substitution intended by Congress, the "property" in § 812(e) and the subsequent, similar § 2056 of the 1954 Code, would consist of the amounts actually paid to the widow. The Court is further compelled to this conclusion in view of the intent of Congress to reduce discrimination among the States as to estate tax advantages by shifting the deduction from a straight deduction to the category of a marital deduction with a 50 per cent limitation. Granting the deduction for allowances in States when the amount to be actually expended is fixed at the time of the court order, and disallowing the deduction in States where the amount to be actually expended is unascertainable until the date of actual termination is a distinction incompatible with the view towards reducing discrimination among the States. See dissent in Re Estate of Rensenhouse, supra, 31 T.C. at page 829.

In view of these classifications, the terminable interest rule must be ruled inapplicable to the widow's allowance in Nebraska. As the property consists of only those sums actually paid to the widow, the property is consumed at the termination of the widow's interest, and there exists no property in which the widow held an interest available to pass from the decedent or his estate to some other person who may possess or enjoy such property within the meaning of § 2056(b) (1) (A) and (B). Therefore, those sums actually expended as a widow's allowance under the Nebraska statutes are entitled to the marital deduction under § 2056(a).

■ Compelling, although not controlling, this conclusion is the fact that the decedent cannot, either by his will or by statute, pass assets of his estate to the widow and through her into the hands of another by means of a widow's

allowance without those assets being subject to an estate tax. Because the primary function of the terminable interest rule is to prevent the escaping of estate taxes by just such means, already unavailable under the widow's allowance, nothing impels me to apply the rule in this case.

The attorneys for plaintiffs will prepare an order in accordance with the findings herein, submitting the same to attorneys for the defendant for approval as to form and determination of the amount actually due hereunder.