ESTATE of Edward A. CUNHA, Deceased, Bank of America, National Trust and Savings Association, Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16278.

United States Court of Appeals Ninth Circuit.

May 23, 1960.

Rehearing Denied Aug. 31, 1960.

294

Steinhart, Goldberg, Feigenbaum & Ladar, J. Donald Pettus, Marvin T. Tepperman, San Francisco, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, L. W. Post, Attys., Dept. of Justice, Washington, D. C., John Pajak, Atty., Tax Div., Dept. of Justice, Washington, D. C. for appellee.

Before STEPHENS, ORR and MERRILL, Circuit Judges.

ORR, Circuit Judge.

Edward A. Cunha, a resident of San Mateo County, California died testate on August 6, 1954, leaving surviving him his widow, Helen V. Cunha, and a son. Thereafter petitioner was duly appointed executor of the estate and in due course petitioned the court in which the probate proceedings were pending for an allowance for the widow's support until administration would be completed. Said court, pursuant to section 680 of the California Probate Code, entered an order granting Helen V. Cunha a "family allowance" of $600 a month, which amount it subsequently increased to $900. A total of $10,500 was paid pursuant to said order. The executors filed federal estate tax returns on behalf of said estate in which they claimed a deduction of the full $10,500 allowance paid the widow as a marital deduction under section 812(e) of the Internal Revenue Code of 1939.[1] Sixty per cent of said deduction was subsequently disallowed by the Commissioner of Internal Revenue on the ground that the right to a widow's allowance under California law terminates upon the death or remarriage of the widow and, hence, it comes within the "terminable interest" limitation of section 812(e) (1) (B).[2] Forty per cent of the amount deducted was allowed because the Commis-

1. "§ 812(e). Bequests, etc., to surviving spouse.
"(1) Allowance of marital deduction.
"(A) In general. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." 53 Stat. 123, as amended by Revenue Act 1948, c. 168, § 361(a), 62 Stat. 110, 26 U.S.C.A. § 812(e).

2. "(B) Life estate or other terminable interest. Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—
"(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and
"(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse * * * *"

sioner concluded that Helen V. Cunha's right to an allowance was vested to the extent that she or her estate would, in effect, receive that percentage of the allowance in any event as beneficiary under her husband's will of forty per cent of the residue of his estate.[3] The executor thereafter petitioned The Tax Court for review claiming that the full amount of the deduction should have been allowed. The Tax Court upheld the partial disallowance of said deduction. We have for review The Tax Court's decision.

There was in existence for some time section 812(b) (5) of the Internal Revenue Code of 1939 (53 Stat. 123, as amended) which permitted the deduction of a family allowance for tax purposes. While said section was in full force and effect, Congress enacted the provision for a marital deduction, so that it is apparent that there was no compelling reason to enact the marital deduction provision in order to provide for the "widow's allowance" deduction. In connection with the construction of the marital deduction provision it is interesting to consider the legislative history. The provision for a marital deduction was added to the Internal Revenue Code of 1939 by The Revenue Act of 1948 (See note 1 supra). The Senate Report accompanying said Act contains a statement that amounts expended for the support of a widow are not interests passing to a spouse within the meaning of the marital deduction provision. Senate Report No. 1013 (80th Cong., 2d Sess. 1948), 1948 U.S.Code Cong.Serv., Vol. II, p. 1224. At that time, amounts actually expended for family support during administration of the decedent's estate were specifically deductible under section 812(b) (5), I.R.C.1939 (53 Stat. 123, as amended). Two years later, however, Congress repealed that provision by section 502 of the Revenue Act of 1950, c. 994, 64 Stat. 906. According to the Senate Report accompanying said Act of 1950, repeal of section 812(b) (5) was

necessary for the reason that "[i]n practice it has discriminated in favor of estates located in States which authorize liberal allowances for the support of dependents. * * *" Senate Report No. 2375 (81st Congress, 2d Sess. 1950), 1950 U.S.Code Cong.Serv., Vol. II, p. 3112. Said report then states:

"Under existing law amounts expended for support of the surviving spouse of the decedent are, by reason of their deductibility under section 812(b), not allowable as a marital deduction under section 812(e) of the code. However, as a result of the amendment made by this section, such amounts heretofore deductible under section 812(b) will be allowable as a marital deduction subject to the conditions and limitations of section 812(e)." Id., at page 3191.

As heretofore pointed out, the Senate Report accompanying the Act which introduced the marital deduction provision two years earlier had stated that a widow's allowance was not an interest passing to a spouse within the meaning of that provision. At a later time, however, the Commissioner conceded that a widow's allowance was an interest in property which passed to the widow within the meaning of the marital deduction provision and would qualify for the deduction if the right to an allowance under applicable state law was vested in a manner such that the widow or her estate would receive payments in any event. See Rev.Rul. 83, 1953–1 Cum. Bull. 395; Rev.Rul. 56–26, 1956–1 Cum. Bull. 447. Deductions of widow's allowances have been upheld where under state law the widow's interest was so vested. See Estate of Proctor D. Rensenhouse, 31 T.C. 818 (1959); King v. Wiseman, D.C.W.D.Okl.1956, 147 F. Supp. 156; Molner v. U. S., D.C.N.D. Ill.1959, 175 F.Supp. 271. But that is not the instant case. It is admitted here that a widow's right to an allowance in California terminates upon her death or remarriage. Petitioner con-

3. See Rev.Rul. 56–26, 1956–1 Cum.Bull. 447.

tends none-the-less that the California allowance does not come within the terminable interest rule when properly construed.

The value of an interest in property passing to a spouse from the decedent is a non-deductible terminable interest under section 812(e) (1) (B) (set forth in note 2 supra) if three conditions are met. First, it must be an interest in property which will terminate upon the occurrence of an event or the lapse of time, etc. Second, another interest in the same property must pass or have passed to someone other than the spouse from the decedent for less than an adequate consideration. Third, such other person must be able to possess or enjoy a part of such property upon the termination of the spouse's interest therein. Unless the interest in question meets all three of these conditions, it is not disqualified for deduction by reason of the terminable interest rule. Taxpayer concedes that a California widow's allowance meets the first condition but argues that *the right* to a widow's allowance is the "property" referred to in section 812(e) and that no person other than the widow has an interest in "such property" or will at any time possess or enjoy any part of "such property". To the contrary, the government argues that the term "property" encompasses the estate assets, the right to the allowance being an "interest" in "such property", and that the son has, in the instant case, an "interest in such property" as a residuary legatee and will possess and enjoy a part of "such property" after the widow's

interest terminates. So, we are confronted with the question of whether the right to a widow's allowance is itself "property" or merely an 'interest" in "property", namely the estate assets. The precise question has been considered in two cases. The Tax Court, by way of dictum, in the case of Estate of Proctor D. Rensenhouse, supra, dismissed a like contention by the taxpayer as ingenious but erroneous, although a vigorous dissent supporting the taxpayer appears. In Quivey v. U. S., D.C.Neb.1959, 176 F. Supp. 433, a contrary result was reached.

The correct meaning of the word "property" as used in section 812(e) is the key to the solution of the problem. The definition of words used in federal tax statutes is governed by federal law. Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119; Burnet v. Harmel, 1932, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199. The Senate Report accompanying the Revenue Act of 1948 provides persuasive evidence of what Congress intended to encompass by the use of the terms "property" and "interest". The relevant portion of the report is set out in note 4 below,[4] from which we conclude that the word "property" was intended to encompass all rights "susceptible of ownership", all lesser rights being "interests" in other property. See In re Reilly's Estate, 3 Cir., 1957, 239 F.2d 797. It is necessary to examine the examples given in said report in order to determine what the committee intended the phrase "rights * * * susceptible of ownership" to mean. An annuity is given as an example of such

---

4. "The terms 'interest' and 'property,' as used in section 812(e) have separate and distinct meanings. The term 'property' is used in a comprehensive sense and includes all objects or rights which are susceptible of ownership. The term 'interest' refers to the extent of ownership, that is, to the estate or the quality or quantum of ownership by the surviving spouse or other person, of particular property. For example, if the surviving spouse is specifically devised an estate for her life in a farm, the 'interest' passing to her is the life estate, and the 'property' in which such interest exists is the

farm. Generally the property in which any person is considered as having an interest is the property out of which, or the proceeds of which, such interest may be satisfied. Thus, in the case of a bequest, devise, or transfer of an interest which may be satisfied out of, or with the proceeds of, any property of the decedent's general estate or of a trust, the interest so bequeathed, devised, or transferred is an interest in any and all of such property * * *" Senate Report No. 1013 (80th Cong., 2d Sess.1948), 1948 U.S.Code Cong.Serv., Vol. II, p. 1225.

a right. Senate Report No. 1013 (80th Cong., 2d Sess. 1948), 1948 U.S.Code Cong.Serv., Vol. II, p. 1234, example 2. On the other hand:

"In the case of a trust *or fund,* the income beneficiaries *and the persons who may receive any part of the corpus* have an interest in the property represented by the assets of the trust or fund *as of the date of the decedent's death."* Id., at page 1229 [Emphasis supplied].

This points up that a legacy of $900 a month to the surviving spouse "during the time necessary to complete administration of my estate" would be an "interest" in "property" represented by the estate assets, and not "property" itself, at the date of the testator's death. See also Surrey, The Revenue Act of 1948, 61 Harv.L.Rev. 1097, 1131 note 126 (1948). We fail to see wherein the right to receive a widow's allowance of $900 a month is more a "right susceptible of ownership" than is the right to such a legacy.

 The right to receive a widow's allowance must be characterized according to the attributes it possesses at the instant of the decedent's death. The Senate Report of 1948 states in this regard that "[i]n determining whether an interest in property is a terminable interest *and whether the conditions of clauses (i) and (ii) are met,* the situation must be viewed as at the date of the decedent's death. * * *" Senate Report No. 1013 (80th Congress, 2d Sess. 1948) 1948 U.S.Code Cong.Serv., Vol. II, p. 1232 [Emphasis supplied]. See Shedd's Estate v. Commissioner, 9 Cir., 1956, 237 F.2d 345; Starrett v. Commissioner, 1 Cir., 1955, 223 F.2d 163; Kasper v. Kellar, 8 Cir., 1954, 217 F.2d 744. To identify the "property" referred to in section 812(e) as the "assets actually paid to the widow out of the gross estate of the decedent, no more or no less," as did the court in Quivey v. U. S., D.C.Neb.1959, 176 F.Supp. 433, 439, is to view the situation not as it existed "as at the time of the decedent's death" but rather from a point in time after the widow had been paid. The widow has only the right to apply for an allowance at the time of her husband's death, the right to an allowance itself not accruing until after a court order granting it. In re Estate of Blair, 1954, 42 Cal.2d 728, 269 P.2d 612, 614. But see Estate of Proctor D. Rensenhouse, supra. The actual amount of the allowance, its duration and subsequent modification are in the wide discretion of the court. In re Estate of Nelson, 1914, 167 Cal. 321, 139 P. 692. The right to receive payments terminates upon the death or remarriage of the widow and in any event upon completion of administration, and the right is personal to the widow and cannot be assigned or given away. In re Estate of Blair, supra; Estate of Hamilton, 1885, 66 Cal. 576, 6 P. 493. Such are the essential attributes of the right to an allowance in California, looked at as of the time of the death of the surviving spouse's husband. Said attributes are not those one associates with the "bundle of rights" ordinarily thought of as ownership. The instant right has even less of those attributes commonly associated with ownership of property than a right to receive an allowance derived from a decedent's will, which latter right, as previously pointed out, is given as an example in the Senate Report of a right which is not "property" in itself. In identifying the property referred to in section 812(e), therefore, the general rule stated in the Senate Report, namely that "[g]enerally the property in which any person is considered as having an interest is the property out of which, or the proceeds of which, such interest may be satisfied," should be applied. Senate Report No. 1013, (80th Cong., 2d Sess. 1948), 1948 U.S. Code Cong. Serv., Vol. II, p. 1225 (quoted in note 4 supra). The California widow's allowance is payable out of the estate of the decedent and the order granting an allowance creates a preferred charge upon the entire estate. See Estate of King, 1942, 19 Cal.2d 354, 121 P.2d 716. The term "property" used in section 812(e), as applied to a widow's

allowance in California refers to the assets of the estate and not to the right to receive the allowance.

Petitioner says that if the term "property" is construed to refer to the estate assets, then a marital deduction would be allowed for widow's allowances in states providing for lump sum payments and not in those where the allowance is payable in installments. Such a result, it is argued, defeats the goal Congress sought to attain of giving equal federal tax treatment to the residents of the different states. The provision for a marital deduction was intended to be remedial because "[t]he basic differences between property rights in community-property and non-community-property States * * * resulted in geographic inequalities in the effect of the estate * * * tax." Senate Report No. 1013 (80th Cong. 2d Sess. 1948), 1948 U.S. Code Cong.Serv., Vol. II, p. 1188. Similarly, the terminable interest rule was necessary to " * * * equate the decedent in the common-law State with the decedent in the community-property State who cannot by his will effect in any way the surviving spouse's interest in the community property." Id., at page 1190. The general policy of geographical equalization does not persuade us, however, that the word "property" should be construed in a manner contrary to the definition and examples given in the 1948 Senate Report. Deductibility under the test Congress has adopted depends upon the character of a right, not its similarity in source (state statute) and purpose (support of widows) to other transfers which are deductible, and a right can only be so characterized by looking to the attributes state law bestows upon it. As Professor Surrey pointed out at the time the provision was enacted, " * * * the plan to achieve complete equalization is inherently incapable of accomplishing its purpose. * * * Estate splitting adopts no such nationwide uniform plan that can operate in essential disregard of local property rules, or, rather, that can operate with uniformity regardless of local variations." Surrey, The Rev-

enue Act of 1948, 61 Harv.L.Rev. 1097, 1156–1157 (1948). See also Anderson, Marital Deduction Equalization, 54 Mich.L.Rev. 1087, 1109 (1956) ("And so we find that a rule that of the terminable interest, designed to equalize the conflicts in property systems may itself be the cause of substantial inequality.") As to this problem generally, see Oliver, State Law in Federal Tax Proceedings, 41 Cal.L.Rev. 638 (1953). Absent an express provision that widow's allowances be deductible regardless of the character under state law of the right to receive such an allowance, we must treat such transfers to the spouse as we would any other, such as a like transfer made by will. Our heretofore expressed conclusion, derived from the definition and examples given in the Senate Report of 1948, that the right to receive a widow's allowance is not "property" as that term is used in section 812(e) is in no way weakened by the fact that lump sum allowances provided for in other states have been held deductible where not subject under state law to a survival requirement.

In considering the committee reports accompanying the Revenue Act of 1950 petitioner takes the view that they indicate that Congress in repealing section 812(b) (5), which expressly allowed deduction of widow's allowances, intended that such amounts be thereafter allowed as a marital deduction under section 812(e). See Senate Report No. 2375, (81st Cong. 2d Sess. 1950), 1950 U.S.Code Cong.Serv., Vol. II, p. 3191 (quoted earlier herein); House Report No. 2319 (81st Cong. 2d Sess. 1950) p. 136. Granted that such an intention is indicated in said reports, they bear no weight. Statements made by a Congressional committee in a 1950 report can be no more than an expression of opinion on what Congress intended two years earlier when it enacted the marital deduction provision in the Revenue Act of 1948. This is especially true where the Senate Report of 1948 accompanying said Act of that year contains an express statement that widow's allowances are

not interests passing to a spouse within the meaning of the marital deduction provision. Senate Report No. 1013 (80th Cong., 2d Sess. 1948), 1948 U.S. Code Cong.Serv., Vol. II, p. 1224.

We conclude that the right to a widow's allowance in California is a terminable interest in the estate assets; that in the instant case another interest in said assets passed from the decedent to his son for less than an adequate consideration; and that the son is entitled to possess and enjoy a portion of said assets upon the termination of the widow's right to an allowance. The decision of The Tax Court is, therefore, affirmed.

Decision affirmed.

Woodbury, Chief Judge, dissented.