## BRUNSWICK GROCERY COMPANY *v.* BRUNSWICK AND WESTERN RAILROAD COMPANY.

1. It is too late for the plaintiff in a civil action to dismiss the same after positive knowledge by his counsel that the jury have agreed upon a verdict for the defendant, and are about to return the same into court; especially when it appears that this knowledge has been acquired with the assent of the presiding judge and of counsel on both sides.
2. A railroad company, as warehouseman, is not liable to the owner of goods for a destruction of the same occasioned by fire resulting from the negligence of its employee, who was an independent contractor, was exercising an independent business, and was not subject to the immediate direction and control of the employer.
3. The uncontradicted evidence in this case showing that the loss of the goods was not the result of any negligence on the part of the warehouseman, the verdict for the defendant was demanded by the evidence; and even if there was any error in the charge of the court upon the subject of the burden of proof, such error was harmless, and is not good ground for a new trial.

Argued November 22, — Decided December 20, 1898.

Complaint. Before Judge Sweat. Glynn superior court. March 1, 1898.

*Crovatt & Whitfield,* for plaintiff.
*Goodyear & Kay,* for defendant.

LEWIS, J. The Brunswick Grocery Company sued the Brunswick & Western Railroad Company for the value of certain salt stored by the plaintiff with the defendant as a warehouseman. The defense relied upon was, that the salt was destroyed by fire

without negligence upon the part of the defendant. On the trial of the case the defendant admitted the contract set out in plaintiff's petition, admitted the value of the salt to be $496.16, and that the plaintiff had such ownership in the salt as would give it a right of action. The plaintiff showed that on April 2, 1896, the salt was in the possession of the railroad company; that since that date, and before bringing the suit, plaintiff made demand on the defendant for the salt, and it was not delivered. The reply which the plaintiff's agent received to his demand was that the salt was destroyed by fire. The defendant introduced testimony substantially to the following effect: A fire on April 2, 1896, destroyed almost the entire railroad property of the company at the wharf, and all the salt in question was consumed by the fire. The fire was not started by the consent, knowledge, or procurement of any employee of the company. There were quite a number of railroad-tracks upon the wharves. Cars were being moved by engines backward and forward daily upon that wharf. At the time of the fire a portion of the wharf was being rebuilt. There was a portable pile-driving engine used in this work. There was some evidence that the wind was blowing from the direction of the engine to the warehouse, and that the smoke-stack of the engine had on it no spark-arrester. The warehouse containing the salt was the one first found on fire. Brown, the contractor, who had charge of the pile-driving engine, and who had control of the entire machinery used in repairing the wharf, was employed by the agent of the defendant to do this work. Brown had previously done other work of the kind for the defendant. His time was not confined to the company's work. He did such other work as he wished to, and had a perfect right to take other work. Neither defendant nor its agents had any control whatever over Brown's hands, nor any control over his machinery. The work of repairing the wharves was given to Brown, who employed, paid, and superintended his own hands, and furnished his own machinery; the company, upon completion of the work, simply settling with Brown at the contract price. It was customary to use such an engine in this kind of work, and witness never knew before of any fire being communicated to the wharf by the engine.

It appears from the record that the judge, at the conclusion of his charge to the jury, being about to take a recess until the next day, instructed the jury that if they should agree upon a verdict during the recess, the foreman should retain it, and the jury might then disperse until court convened. The court then, upon request of counsel for both parties, gave permission to counsel to ascertain from the jury their finding when made. During the recess counsel for plaintiff ascertained that the verdict was in favor of the defendant, and when the judge, upon the convening of court next day, was about to receive the verdict of the jury, counsel for plaintiff moved to dismiss the case. The court, upon objection of counsel for defendant, overruled the motion to dismiss, and ordered that the verdict be entered of record, which was done. To the overruling of the motion to dismiss the case, counsel for movant excepted. The jury returned a verdict for the defendant, and error is assigned by plaintiff's counsel on the judgment of the court overruling his motion for a new trial.

1. § 5044 of the Civil Code allows the plaintiff in any action to dismiss his case either in vacation or in term time. Under the decisions of this court the plaintiff has this privilege at any time, even after the commencement of the trial, provided it is exercised before the rendition or publication of a verdict. Manifestly there is no right on his part to dismiss the case after a formal return by the jury of their verdict into court, and after counsel has thus been made aware of the result of the trial. In this case permission was given by the court for the jury to disperse after they had found their verdict, and they were also authorized to make known their finding to the counsel who represented the contending parties. It was ascertained by counsel for plaintiff during the recess of the court what the verdict was. So far as the right of plaintiff to dismiss its action was concerned, we think the ascertainment of the verdict in this way was tantamount to its publication. In the language of Bleckley, Judge, in *Meador* v. *Bank*, 56 *Ga.* 609, "The plaintiff had lost his wager, and it was too late for him to withdraw the stake." In *Peeples* v. *Root*, 48 *Ga.* 592, it was decided that the plaintiff may dismiss his case at any time before the

verdict is published, if unknown to him.　Warner, Chief Justice, delivering the opinion in that case, says: "If it had been shown to the court by competent evidence that the plaintiff had surreptitiously, or otherwise, ascertained that the jury had found a verdict against him before the motion was made to dismiss the case, and the court had then refused to dismiss it on that account, we should not have been disposed to interfere with that judgment, but nothing of that kind was made to appear to the court in this case."　Such a state of facts was made clearly to appear in the present case, and we think the court was right in overruling the motion to dismiss.

2, 3. There were various grounds in the motion for a new trial, based upon alleged errors in different portions of the court's charge on the subject of the burden of proof in this case.　As we construe the charge as a whole, its effect was to instruct the jury that if the proof showed goods were intrusted to a warehouseman by the owner, and the warehouseman failed to deliver the same on demand, this raised a presumption of negligence against the defendant; but that if the defendant accounted for the same by showing they were destroyed by fire not caused by the defendant or its agents, this removed the presumption, and the burden of proof was then upon the plaintiff to show that the loss was due to the negligence of the defendant before there could be a recovery.　Civil Code, § 2930, declares, "a failure to deliver the goods on demand makes it incumbent on him [the warehouseman] to show the exercise of ordinary diligence."　There is quite a conflict of authority upon this subject, but we think the weight of it will sustain the charge of the court as above interpreted.　For authorities in point see 28 Am. & Eng. Enc. L. 648–9, 650; Hale on Bailments and Carriers, 240 et seq.; Schmidt v. Blood, 24 Am. Dec. 149–155; Abbott's Trial Evidence, 562, and numerous authorities cited in above works.　On the same line with the weight of authority above cited seems to be the ruling of this court in *Cunningham* v. *Franklin*, 48 *Ga.* 531.　We hardly think the section of the code above cited changes the common-law rule upon the subject.　The authorities seem to be uniform to the effect that where there is failure on the part of the warehouseman to de-

liver goods on demand, there is a presumption of liability, and the burden is on him of accounting for the goods; but it does not follow from this that the burden necessarily remains on him throughout the case, for he may account for the goods by showing their loss in such a way, by burglary or an accidental fire, for instance, as will shift the onus, and will raise the presumption that the loss thus accounted for was not the result of the warehouseman's negligence.

But we do not deem it necessary to pass directly upon this question in the decision of this case. Even if the onus probandi was upon the defendant to the fullest extent claimed by the plaintiff in error, we think it was successfully carried by the uncontradicted testimony in the case. The theory of plaintiff's counsel evidently was that the fire was communicated to the warehouse from the engine that was being operated by the contractor Brown, and was the result of negligence in not having the engine provided with a spark-arrester, or with some contrivance to prevent the spread of fire, and that, this contractor being an employee of the defendant company, this negligence was attributable to the company. There was no question, under the testimony, that the party engaged in the operation of this engine was an independent contractor, and was not subject to any direction and control in the management of his machinery and in the operation of his business by the railroad company. Civil Code, § 3818, declares: "The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer." The work and business of the employer in this particular case did not fall within any of the provisions of § 3819 of the Civil Code. The work was not wrongful in itself, nor was it a nuisance. From previous experience and knowledge of the defendant's agents the work was not in its nature dangerous to others. The act which the contractor was doing was in violation of no duty imposed by contract with the employer, nor in violation of any duty imposed by the statute; and the employer did not retain the right to control the time and manner of executing the work, or interfere and assume control so as to create the re-

lation of master and servant; nor did the employer ratify the wrong of the independent contractor. Where none of these things exist, it manifestly follows from the statutes above cited that there can be no liability on the part of the employer. In *Atla. R. Co.* v. *Kimberly,* 87 *Ga.* 161, it was decided that a railroad company is not liable for an injury caused by the negligence of an independent contractor in constructing its railroad, where it retains no control over the contractor except to see, by its superintendent, that the railroad is built according to the contract. To the same effect see *Fulton Co. R. Co.* v. *McConnell,* 87 *Ga.* 756; *Wilson* v. *White,* 71 *Ga.* 506. Even if there was any error in the charge of the court on the subject of the burden of proof, such error is not cause for a new trial, when another trial could not legally result in a different verdict.

*Judgment affirmed. All the Justices concurring.*