ESTATE OF WILLIAM A. LANDERS, SR., DECEASED, WILLIAM A.
LANDERS, JR., AND DANIEL LANDERS, EXECUTORS, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82578. Filed September 13, 1962.

*Henry M. Henderson, Esq.*, for the petitioner.
*Donald C. Knickerbocker, Esq.*, for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency in the estate tax liability of petitioner in the amount of $13,751.38.

The issues presented for our determination are: (1) Whether the decree of the local probate court relative to the interest which decedent's wife acquired under his will is binding upon us; and, in any event, whether said interest constituted a "terminable interest" within the meaning of section 2056(b)[1] (and the exception thereto, section

---

[1] Unless otherwise specified, all Code references are to the Internal Revenue Code of 1954.

2056(b)(5)) so as to deny the petitioner the marital deduction under section 2056(a); (2) whether the amount set aside, pursuant to court order, as a year's widow's allowance under Georgia statutes, constituted a terminable interest; (3) whether the court costs and legal fees incurred in obtaining such allowance are deductible by the estate under section 2053(b); (4) whether a partial intestacy was created as to decedent's interest in certain bank accounts so that decedent's wife would be entitled to one-fifth thereof under Georgia statutes.

FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

William A. Landers, Sr. (hereinafter referred to as decedent), died testate on March 10, 1956, a resident of De Kalb County, Georgia. Decedent was survived by his wife, Edna Pearl Landers, four daughters, and two sons. The sons, Daniel Landers and W. A. Landers, Jr., were nominated as coexecutors under the will. His will was duly probated, letters testamentary were issued to the executors named therein, and an estate tax return was filed with the district director of internal revenue, Atlanta, Georgia.

The dispositive portions of said will provided:

[Fourth] To my beloved wife, Edna Pearl Landers, one-half of all my money or credits in banks or saving institutions; also, all stocks or bonds that I may own, or be entitled to, at my death; also the following real estate and personal property, houses and lot at 4173 Covington Road, Dekalb County, Georgia, together with furniture, fixtures, tools, etc., therein or thereon; also, one Chrysler automobile and one Willys jeep; also, other real estate as follows: No. 612 Park Drive, N.E., Atlanta, Georgia; No. 313 Ware Avenue, East Point, Georgia; No. 794 North Central Avenue, Hapeville, Georgia; No. 5 Landers Drive, Clayton County, Georgia. Also, watches, and other personal effects, all which is to have and use as long as she lives and remains single.

[Fifth] At her death whatever of this property remains is to be divided equally among our children then living.

[Sixth] To my sister, Miss Georgia Landers, $3,000.00 in cash.

[Seventh] All the rest of the real estate I own at my death is to be divided equally between my children then living, except my daughter, Mrs. Grace Butcher, is to have as her part of said real estate the six-room brick house at No. Custer Street in Hapeville, Georgia. This house on Custer Street is to be held and used by her during her lifetime and at her death is to be inherited by her two children, Leu Allen Stephens and Frances Stephens.

[Eighth] At my death one-half of the money I own on hand, or in banks or saving institutions, is to be divided equally among my children then living and the part falling to my daughter, Grace, is to be kept in a separate bank account and paid to her at the rate of $100.00 per month until she receives her full share, except in cases of emergency, such as doctors or hospital bills, which can be paid by the Executor.

The property described in paragraph Fourth (apart from that set aside for widow's support) had the following agreed values at decedent's death:

| | |
|---|---:|
| One-half credits in bank | $25, 779.14 |
| Real estate | 43, 250. 00 |
| Coca Cola stock | 1, 157. 62 |
| Watches | 20. 00 |
| | 70, 206. 76 |

All property described in said paragraph and not enumerated above was taken by Edna as her widow's allowance (discussed below).

The real estate passing under paragraph Seventh had an agreed value of $38,950.

On January 28, 1957, the executors petitioned the Superior Court of De Kalb County for a construction of this will. The meaning of this already ambiguous will was further confused when the judge issued his order (dated Feb. 27, 1957) which consisted of answers to certain questions posed by the executors in the petition. The relevant questions raised in the petition with the answers given by the judge were as follows:[2]

Question (b):
Does the language "all of which she is to have and use as long as she lives and remains single" apply only to the "watches, and other personal effects" described in the last sentence of the same said fourth paragraph, or does the same relate to the whole of said paragraph and all of the property therein described?
Answer:
In answer to Subsection (B) [b] [it] applies to all of the property described in the fourth paragraph of said Will.
Question (c):
Does the fifth paragraph of said will apply to all of the fourth paragraph, or does it apply only to the property described in the last sentence of the fourth paragraph?
Answer:
In answer to Subsection (C) [c] the fifth paragraph of said Will is applicable to all of the property described in paragraph 4 of the Will.
Question (d):
Does the language of said fifth paragraph vest in the widow a simple life estate in whatever property to which the said language is applicable, or under such language does the widow have the right to consume or alienate any of the property to which the said fifth paragraph is applicable?
Answer:
In answer to Subsection (D) [d] the 5th paragraph of said Will leaves the wife a simple life estate.

Question (f):
It is respectfully submitted that the exception in the eighth paragraph of said will with respect to the share of Mrs. Grace Butcher in the testator's monetary assets is so vague and indefinite that the provisions thereof are utterly incapable

---

[2] The Superior Court also decreed that the "one-half" phrase in paragraph Fourth applied to all the property described in that paragraph and not simply to the cash. However, in view of our decision under this issue we need not decide whether only one-half the property described in paragraph Fourth passes to the widow since we hold that none of it qualifies for the marital deduction.

of being carried out, and the Court is prayed to so declare, or else render full and complete direction.

Answer:

In answer to Subsection (F) [f] to paragraph 8 of the said Will, said paragraph is so vague and indefinite that it would be incapable of being administered by anyone.

The parties made numerous efforts to have the judge change this order but to no avail and the order became final at the conclusion of the December 1956 term of court. No party appealed from the order.

On April 10, 1957, the parties, in an apparent effort to comply with the above order, entered into a "Distribution Agreement." Under this agreement Edna (the widow) received $9,270 in cash and 9 shares of common stock in Coca Cola Company (then valued at $930) for a release of all her interests under paragraph Fourth of the will. She was also to receive one-fifth of all further moneys available for distribution after payment of expenses and charges against the estate.

On June 16, 1958, by agreement of all the parties the action was "dismissed" of record.

On March 30, 1956, Edna petitioned the Court of Ordinary of De Kalb County, Georgia, for a setting apart of a "Year's Support." The court set aside certain property, ultimately valued at $23,500, for the widow pursuant to this petition. The property set apart to satisfy this award constitutes the remainder of the property described in paragraph Fourth of decedent's will (i.e., the property described under paragraph Fourth other than the $70,206.76 described above.)

In the proceeding to set aside this award the following expenses were incurred:

| | |
|---|---|
| Attorney's fees | $420. 00 |
| Court costs and legal advertising | 26. 00 |
| Recording | 2. 25 |
| | 448. 25 |

OPINION.

*Issue 1. Widow's Interest Under Fourth Paragraph of Will.*

Petitioner seeks to obtain the marital deduction for the property passing under paragraph Fourth with the insignificant exception of the watches. Petitioner maintains that the language "all of which she is to have and use as long as she lives and remains single" at the end of paragraph Fourth and the language of the entire paragraph Fifth modify and limit only the wife's interest in the "watches, and other personal effects" and that as to the remainder of the property described in paragraph Fourth the wife received an absolute fee.

At the outset, petitioner is confronted with the Superior Court decree (interpreting the will) ruling directly to the contrary.

It is now settled that where a question is fairly presented to a State court for its independent consideration, the ensuing State court decree constitutes a binding determination of the property rights of the parties for purposes of Federal taxation. *Freuler* v. *Helvering*, 291 U.S. 35 (1934) ; *Blair* v. *Commissioner*, 300 U.S. 5 (1937) ; cf. *Gallagher* v. *Smith*, 223 F. 2d 218 (C.A. 3, 1955). However, if the decree is "collusive" in the sense that the apparently antagonistic parties in the State court actually joined together to procure a result which would adversely affect the Government's right to additional tax, such decree need not be regarded as binding. *Freuler* v. *Helvering, supra; Saulsbury* v. *United States*, 199 F. 2d 578 (C.A. 5, 1952).

The absence of collusion is established by a showing of adverseness between the parties in the State court proceeding. *Saulsbury* v. *United States, supra*. Logically, if one portion of the decree is harmful, taxwise as well as otherwise, to the private litigant it can be assumed that the decree was the product of an adverse proceeding and was hence noncollusive. Cf. *Estate of Mary Clare Milner*, 6 T.C. 874 (1946). The circumstance that in a second portion of the same decree the State court rules against the interest of the party who prevailed in the first portion is also persuasive evidence that there was no "collusion." *Freuler* v. *Helvering, supra*.

The Superior Court's interpretation of paragraphs Fourth and Fifth of decedent's will militates against petitioner's tax interest (the marital deduction) here, as will be more fully developed below. We thus hold that the Superior Court decree, whether or not it represented a correct interpretation of Georgia law, binds us as to the property rights of the parties there adjudicated. *Freuler* v. *Helvering, supra; Blair* v. *Commissioner, supra*. Cf. *Estate of Charles Elson*, 28 T.C. 442 (1957) (where the parties appear to have agreed upon a result which they desired to have the local court "rubberstamp" in order to achieve tax results).

Petitioner would have us treat the dismissal, entered after the Superior Court decree had become final, as, in effect, eradicating the entire order. It relies upon section 3-510, Georgia Code Annotated, which provides:

3-510. * * * Actions dismissable at any time ; entry of dismissal on docket; * * *.—The plaintiff in any action, in any court, may dismiss his action either in vacation or term time, if he shall not thereby prejudice any right of the defendant, and if done in term time, the clerk of court or justice of the peace shall enter such dismissal on the docket. * * *

While this provision allows dismissal "at any time" if there is no prejudice to the defendant, we think it obvious that it refers only to a dismissal akin to a "voluntary nonsuit" where the cause of action may be started anew. See *Wood* v. *Keysville Lumber Co.*, 49 Ga. App. 799, 175 S.E. 923 (1934) ; *Harvey* v. *Boyd*, 24 Ga. App. 561, 101 S.E.

708 (1919). That is, the right exists only before the court order has become final in the res judicata sense. This is necessarily implied by the long-standing rule in Georgia that a right of dismissal is not available to a party after positive knowledge of the court or jury verdict for his opponent. *Brunswick Grocery Co.* v. *Brunswick & W. R. Co.,* 106 Ga. 270, 32 S.E. 92 (1898) ; *Bridges* v. *Mutual Benefit Health & Accident Ass'n,* 49 Ga. App. 552, 176 S.E. 543 (1934). The order of the court had long since become final and when not appealed from it became "the law of the case" (whether correct or not) and forever binding on the parties.[3] Cf. *Milliken* v. *Meyer,* 311 U.S. 457 (1940).

We thus treat the decree of the Superior Court as binding upon us, but note that it seems to be internally inconsistent. The answers to questions (b) and (c), when considered with those questions, state that the widow obtained a life estate together with certain other powers (e.g., to use or consume), whereas in answer to question (d) it states that the widow received "a simple life estate." We resolve this seeming inconsistency by noting that clearly the Fourth and Fifth paragraphs contemplated a power "to use" in the widow and not simply the power to enjoy income from the property. This must have been what the Superior Court had in mind when it ruled that all the property given to the widow under paragraph Fourth was modified by the language at the end of that paragraph and by all of paragraph Fifth, and we so hold.

It remains for us to decide whether the interest thus created in the widow qualifies for the marital deduction under section 2056.[4]

Respondent maintains that it is disqualified because it is a "terminable interest" within the meaning of section 2056 (b) (1) since the property so given to the surviving spouse may pass to others upon

---

[3] Petitioner argues that:

"Having in their honest efforts to obtain the Superior Court's assistance obtained therefrom a purported interpretation even more incongruous than the will with which they were confronted, and having sought the aid of the Superior Court in concert, they [the parties to the petition] had the right and power to act in concert in scrapping the purported interpretation."

This statement can mean no more than that the parties entered into a settlement to avoid the costs and uncertainties of further litigation. For, in view of our above analysis, it cannot mean that the decree was not binding upon the parties. But in any event this argument contradicts evidence adduced by petitioner itself. Its executor testified in reference to the 1957 distribution agreement:

"At the time this will construction was handed down, we were trying to comply with * * * [the Superior Court's] ruling."

Furthermore, the settlement actually made—though obviously a product of compromise and not controlling as to the proper construction of the will or even the parties' understanding thereof—reflects an attempt to comply with the decree. The widow was 82 years of age and an invalid at the date of the agreement. The full value of the property passing under paragraph Fourth of the will was roughly $70,000, yet the widow received only $10,200 plus a one-fifth interest in undistributed cash.

[4] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and

her death. Petitioner recognizes that the legacy falls within (b) (1) initially but claims that it is removed from the operation thereof by reason of paragraph (5) of section 2056(b). It claims that, under controlling Georgia law, the wife had the equivalent of a power to appoint in all events and therefore the gift falls under section 2056 (b) (5) as an exception to the "terminable interest" rule.

To decide the nature of the interest created in the widow it is of course necessary for us to determine the intent of the testator. Clearly the expression "whatever of this property remains" evinces an intent that the wife be permitted to invade corpus (apparently at her own whim). Nevertheless, the gift of a life estate when accompanied by a remainder over is not tantamount to a fee simple absolute even though there are powers of disposition annexed to the life estate. *Melton* v. *Camp*, 121 Ga. 693, 49 S.E. 690 (1905); *Cochran* v. *Groover*, 156 Ga. 323, 118 S.E. 865 (1923); *Paulk* v. *Smith*, 56 Ga. App. 53, 192 S.E. 68 (1937); *Jenkins* v. *Shuften*, 206 Ga. 315, 57 S.E. 2d 283 (1950).

In 36 A.L.R. 1180 the "majority rule" is stated:

The great majority of the cases support the view that where an estate for life, with remainder over, is given, with a power of disposition in fee of the remainder annexed, the limitation for the life of the first taker will control, and the life estate will not be enlarged to a fee, notwithstanding the power of the life tenant to dispose of the fee.

---

(d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, * * *

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * *

* * * * * *

(5) LIFE ESTATE WITH POWER OF APPOINTMENT IN SURVIVING SPOUSE.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, * * * payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, * * * (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

See also 27 A.L.R. 1381, 1388, and 75 A.L.R. 66, 93. Indeed, in *Robertson* v. *Johnston*, 24 Ga. 102 (1858), the court held that even though the gift to the first taker was in terms absolute, the gift over of "what may remain" qualified the gift so that the first taker did not receive an unqualified right of disposition inconsistent with the executory limitation. See especially in this regard *Chestnut* v. *Chestnut*, 300 Pa. 146, 151 Atl. 339 (1930).[5]

Petitioner relies upon *Huff* v. *Yarbrough*, 138 Ga. 613, 75 S.E. 662 (1912), to support the theory that the gift here at issue gives the wife a "fee simple" and that the gift over is void. There the gift to the wife gave her "all the property * * * with all the rights and privileges * * * for [her] support, * * * and should there remain any property * * * at [her] death" it was to be given to the plaintiffs (Huff). Plaintiffs sought to recover from defendant certain property given to the wife under these terms. Defendant was the grantee of the wife who had sold the property to him during her life. In upholding an order of the lower court sustaining defendant's demurrer the Georgia Supreme Court concluded (75 S.E. at 664):

> It appearing from the petition that Mrs. Martha Huff during her life conveyed the property in controversy to the defendant in this case, *and it not appearing therefrom that this conveyance was not made for the purpose of procuring a support for herself as contemplated in the deed of her husband*, J. F. Huff, the petition showed on its face that the complainants had no title to the property which they sought to recover, and the court properly dismissed the petition on general demurrer. [Emphasis supplied.]

It is thus clear that plaintiffs there were unsuccessful only because they failed to allege that the wife's conveyance to the defendant was inconsistent with her permissive use of the property (support). It seems clear that the ruling on the demurrer would have been *contra* had such allegations been made.

We note, as has the Georgia court in several of these cases, that while the testator may intend the life tenant to use the property freely with no liability for waste, it is not at all unusual that he also clearly intends that what is not *so used* is to pass to other named parties. Thus the life tenant's power of disposition is not absolute, e.g., he cannot *give away* the property. We think the will involved herein readily lends itself to such a construction.

While concededly an unlimited power to invade corpus qualifies under section 2056(b)(5) (see sec. 20.2056(b)–5(g)(1)(i), Estate Tax Regs.) it is likewise clear under section 20.2056(b)–5(g)(3), Estate Tax Regs., that the spouse "must have the unrestricted power

[5] The laws of the various other jurisdictions in cases decided by the Tax Court are in accord. See, e.g., *Estate of Ralph G. May*, 32 T.C. 386 (1959), affd. 283 F. 2d 853 (C.A. 2, 1960), certiorari denied 366 U.S. 903 (New York law) ; *Estate of Thomas J. Semmes*, 32 T.C. 1218 (1959), affirmed per curiam 288 F. 2d 664 (C.A. 6, 1961) (Tennessee law) ; cf. *Estate of Harriet C. Evilsizor*, 27 T.C. 710 (1957) (Ohio law).

exercisable at any time during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift." Earlier regulations of like purport have been consistently upheld. *Estate of Theodore Geddings Tarver*, 26 T.C. 490, affirmed on this issue 255 F. 2d 913 (C.A. 4, 1958); *Estate of Ralph G. May*, 32 T.C. 386 (1959), affd. 283 F. 2d 853 (C.A. 2, 1960), certiorari denied 366 U.S. 903, and cases there cited. Lacking the prescribed power, the spouse does not have the power of appointment "exercisable * * * in all events" as section 2056(b) (5) requires. Accordingly, we hold that the widow's interest in the property passing under paragraph Fourth of decedent's will is a "terminable interest" and does not qualify for the marital deduction. *Estate of Edward F. Pipe*, 23 T.C. 99, affd. 241 F. 2d 210 (C.A. 2, 1957); *Estate of Ralph G. May, supra; Estate of Thomas J. Semmes*, 32 T.C. 1218 (1959), affirmed per curiam 288 F. 2d 664 (C.A. 6, 1961); *United States* v. *Lincoln Rochester Trust Company*, 297 F. 2d 891 (C.A. 2, 1962), certiorari denied 369 U.S. 887.

*Issue 2. Support Allowance.*

Petitioner seeks to deduct the $23,500 support allowance as a marital deduction under section 2056. Respondent in challenging the deduction points to sections 113–1002 and 113–1033, Georgia Code Annotated,[6] as in effect in 1956. (See *Estate of William Lamar Hailey*, 36 T.C. 120, for subsequent history of these sections of the Georgia statute.) He maintains that since this Georgia statute requires that the widow survive to the date of the final award, the widow's interest is a terminable one within the meaning of section 2056(b).[7] Section 2056(b), read literally, might support this view. In effect respond-

---

[6] Sec. 113–1002. Year's support to family; appraisers, appointment and duties of; amount of estate set aside; taxes and tax liens; time of filing application.—Among the necessary expenses of administration, and to be preferred before all other debts, except as otherwise specially provided, is the provision for the support of the family, to be ascertained as follows: Upon the death of any person testate or intestate, leaving an estate solvent or insolvent, and leaving a widow, * * * to set apart and assign to such widow * * * either in property or money, a sufficiency from the estate for their support and maintenance for the space of 12 months from the date of administration, * * * All applications for a year's support from the estate of a decedent shall be filed within seven years from the date of the death of such deceased. * * *

Sec. 113–1033. Year's support of widow barred by death or remarriage.—The right of a widow to a year's support from the estate of her deceased husband shall be barred by the death of said widow, or by the subsequent remarriage of said widow, prior to the setting apart of such year's support. The right of a widow to a year's support from the estate of a decedent shall be barred by the death of said widow after 12 months from the date of the death of said decedent and prior to the filing of the application for such year's support. * * *

[7] Respondent apparently concedes that once the final award is made the widow's right is indefeasible under Georgia law. The widow's subsequent death or remarriage within the year will not defeat her right. See *Harmon* v. *Gaddy*, 193 Ga. 574, 19 S.E. 2d 302 (1942); *Smith* v. *Sanders*, 208 Ga. 405, 67 S.E. 2d 229 (1951); *Hiers* v. *Striplin*, 210 Ga. 293, 79 S.E. 2d 539 (1954); see also *First Nat. Bank & Trust Co. of Augusta* v. *United States*, 191 F. Supp. 446 (S.D. Ga. 1960), affd. 297 F. 2d 312 (C.A. 5, 1961), and the Georgia authorities cited in footnote 1 therein. See also Ga. Code Ann., sec. 113–1023.

ent's position is thus that a widow's support allowance qualifies for the marital deduction only if her right to it (for the full period allowed under State law) is indefeasibly vested at the moment of the husband's death. Under such a restrictive interpretation of section 2056(b), there is hardly any State in which the widow's support allowance would qualify.[8] Cf. *In Re Dillman's Estate*, 8 Ill. App. 2d 239, 131 N.E. 2d 634 (1956). It is clear to us that Congress could not have intended so narrow a reading of that section. See *Estate of Proctor D. Rensenhouse*, 31 T.C. 818 (1959) (including Judge Pierce's concurring and dissenting opinion, especially at page 829).

Prior to 1950, amounts expended for widow's support allowances (generally during the entire period of administration) were deductible as administrative expenses under section 812(b)(5) of the 1939 Code, subject to the provisions therein (reasonable in amount). By section 502 of the Revenue Act of 1950, Congress repealed section 812(b)(5) with the following explanations (S. Rept. No. 2375, 81st Cong., 2d Sess., 1950-2 C.B. 483, 525, 576):

(6) Estate Tax Deduction for Support of Dependents

Section 812(b) of the Code allows the gross estate of a decedent to be reduced for estate tax purposes by amounts "reasonably required and actually expended" for the support of the decedent's dependents during settlement of the estate to the extent that such expenses are allowed by State law. This deduction is inconsistent with the concept of the estate tax as a tax on all properties transferred at death. In practice it has discriminated in favor of estates located in States which authorize liberal allowances for the support of dependents, and it has probably also tended to delay the settlement of estates.

Section 502 of your committee's bill repeals this particular feature of the estate tax law. This amendment will apply with respect to estates of decedents dying after the date of enactment of this bill.

\*       \*       \*       \*       \*       \*       \*

Section 502. Repeal of Deduction for Support of Dependents

This section of the bill, which is identical with section 502 of the bill as passed by the House, amends section 812(b) of the Code (relating to deductions from gross estate of a decedent) to eliminate, \* \* \* the deduction for amounts expended for the support, during the settlement of the estate, of dependents of the decedent.

Under existing law amounts expended in accordance with the local law for support of the surviving spouse of the decedent are, by reason of their deductibility under section 812(b), not allowable as a marital deduction under section 812(e) of the Code. However, as a result of the amendment made by this section, such amounts heretofore deductible under section 812(b) will be allowable as a marital deduction subject to the conditions and limitations of section 812(e).

This history convinces us that Congress still intended, in general, that the support allowances would be deductible. However, because

---

[8] However, this apparently was the Georgia law prior to the 1955 enactment of sec. 113-1033 quoted in footnote 6. *Farris* v. *Battle*, 80 Ga. 187, 7 S.E. 262 (1887); *Swain* v. *Stewart*, 98 Ga. 366, 25 S.E. 831 (1896).

the allowances in some States were thought to be excessive, it desired to bring the allowance within the limits of the marital deduction provisions (especially the aggregate 50-percent limitation, see section 2056(c)). See *Estate of Edward A. Cunha*, 30 T.C. 812 (1958), affd. 279 F. 2d 292 (C.A. 9, 1960) ; *Estate of Proctor D. Rensenhouse*, *supra; Quivey* v. *United States*, 176 F. Supp. 433 (D. Nebr. 1959), revd. 292 F. 2d 252 (C.A. 8, 1961).

We have already held in the case of an estate administered in a jurisdiction with laws much like that of Georgia, that the widow's allowance qualified. *Estate of Margaret R. Gale*, 35 T.C. 215 (1960) (Maine law). In *Gale*, we recognized (p. 220) that under the decisional law of Maine the widow's rights were defeated if she did not survive until the final decree is made. But, inasmuch as the widow's right was indefeasibly vested *once it was acquired* we allowed the deduction. The only conceivable distinction between our case and *Gale* is that here the controlling State law is statutory and in Maine it was court-made. Manifestly, this is a distinction without a difference. We feel that the *Gale* case is fully controlling here. See also *Estate of Michael G. Rudnick*, 36 T.C. 1021 (Mass. law).

In the *Rensenhouse* case, the controlling State law (Michigan) was somewhat less clear. However, the opinion in *Rensenhouse* dealt with the situation as though Michigan, in line with the apparent general rule, did not give the widow *fully* vested rights unless she survived either the statutory 1-year period of allowance or the date of the final decree prior thereto (See *Bacon* v. *Perkins*, 100 Mich. 183, 58 N.W. 835 (1894).) While our version of Michigan law as expressed in *Rensenhouse* may not have been entirely accurate (cf. *Reynolds' Estate* v. *United States*, 189 F. Supp. 548 (E.D. Mich. 1960)), it would appear that under *Bacon* v. *Perkins*, *supra*, the wife's death prior to the award limits her recovery to support for the period (if less than the 1-year maximum) during which she lived. Therefore, the basis upon which *Rensenhouse* dealt with Michigan law is acceptable for our purposes. *Rensenhouse* thus allowed the marital deduction simply because the widow's right *once granted* by an award which had become final was indefeasible. For that matter, even under Illinois law it would appear that the wife's death immediately after the husband's (and prior to the award of support) limits her estate's recovery from her husband's estate to the statutory minimum ($1,000). *In Re Dillman's Estate*, *supra*. Cf. *Molner* v. *United States*, 175 F. Supp. 271 (N.D. Ill. 1959).

The customary purpose of widow's support allowances is to enable the widow to maintain her past standard of living during the administration of her husband's estate. See *United States* v. *Quivey*, 292 F. 2d 252 (C.A. 8, 1961), and authorities there cited. That purpose no longer exists when the widow dies (or remarries) prior to the end of

the statutory period. Hence, it would be most extraordinary for a State to allow a widow (or her estate) to recover for the full statutory period if she had died within it. This consideration causes us to reject respondent's limited view of deductibility of support allowances. (See Rev. Rul. 53-83, 1953-1 C.B. 395.) True, in Georgia (unlike Michigan or Illinois but like Maine) the widow must also survive the date of the final award *even after* the statutory period has expired. However, bearing in mind that most petitions for the allowance are normally made promptly after the husband's death, we do not deem this added condition to be of any significance. Certainly the *Gale* case did not attach any importance to it.

The only cases which have denied (on grounds here relevant) the marital deduction for support awards are *Estate of Edward A. Cunha, supra,* and *United States* v. *Quivey, supra.* However, as we have explained in *Rensenhouse, Cunha* dealt with California law under which admittedly the widow's right to future payments (said allowances being payable monthly) could be defeated by her death or remarriage. The same reasoning was applied in the *Quivey* case which dealt with Nebraska law much like that of California in *Cunha.* See also *United States* v. *Shafer,* 293 F. 2d 629 (C.A. 8, 1961) (involving Iowa law similar to that of Nebraska). However, it is apparent that the instant case is clearly distinguishable from *Cunha, Quivey,* and *Shafer. Estate of Proctor D. Rensenhouse, supra.*

Respondent argues that the above considerations of legislative history are not persuasive here because under section 2056 (b) the "general rule" is that the question whether or not an interest is "terminable" must be decided by examining the widow's right as of the date of decedent's death. He relies upon language to that effect in the Ninth Circuit's opinion in the *Cunha* case (279 F. 2d 292), and in *Kasper* v. *Kellar,* 217 F. 2d 744 (C.A. 8, 1954). In *Cunha* the language was used in reference to a problem not here presented: Taxpayer's contention (rejected by the court) that the phrase "such property" in section 2056(b) (1) (B) referred only to the property actually passing to the surviving spouse rather than any property subject to the widow's claim. In the *Kellar* case the language was used to disqualify a gift to a wife "if living at the time of the distribution of my estate." Thus, neither of these cases laid down any such rule as respondent here urges with reference to the question here presented. Cf. *United States* v. *Quivey, supra.* Our analysis of the legislative history convinces us that this "general rule" has no application here. *First Nat. Bank & Trust Co. of Augusta* v. *United States,* 191 F. Supp. 446 (S.D. Ga. 1960), affd. 297 F. 2d 312 (C.A. 5, 1961).

The first Federal estate tax case dealing directly with the Georgia support allowance statute is *First Nat. Bank & Trust Co. of Augusta*

v. *United States, supra.*[9]  There, the court, in holding that the allowance did not create a "terminable" interest, labeled the provisions of section 113–1033 of the Georgia statute "adjective provisions having no substantive effect" and "in the nature of a statute of limitations." While we do not necessarily agree with such a characterization of the Georgia statute, we do agree with the court's distinction of the *Cunha* case on much the same reasoning as we have here distinguished that decision.  The *First Nat. Bank & Trust Co. of Augusta* case was followed in *Candler* v. *United States*, an unreported case (N.D. Ga. 1961), affirmed per curiam on another issue, this issue apparently not having been appealed, 303 F. 2d 439 (C.A. 5, 1962).

In view of all of the above, we hold that the allowance in the instant case, being indefeasibly vested once it is granted, does not constitute a "terminable interest" within the meaning of section 2056(b)(1) and is therefore allowable as a marital deduction under section 2056(a).

*Issue 3. Costs Incurred in Setting Apart Widow's Allowance.*

Petitioner claims that the $448.25 expended to procure the widow's $23,500 allowance is deductible under section 2053.[10]  Subsection (b) thereof allows deduction for administrative expenses incurred in administering property not subject to claims to the same extent (with an exception not here relevant) that subsection (a) would permit the deduction for expenses incurred in administering property subject to such claims.  Thus we may treat this issue just as if it arose under section 2053(a).  Under such section, it is clear that a deduction is not allowable for expenses incurred primarily for the benefit of individuals rather than the estate as an entity.  Sec. 20.2053–3(a), Estate Tax Regs.  Attorneys' fees incurred by beneficiaries "incident to litigation as to their respective interests" are also nondeductible.  Sec. 20.2053–3(c)(3), Estate Tax Regs.  These regulations have received our approval.  *Estate of Leo J. Dutcher*, 34 T.C. 918 (1960).  It is manifest that the expenses here were incurred for the primary benefit

---

[9] Respondent recognizes that our opinion in *Estate of William Lamar Hailey*, 36 T.C. 120 (1961), while dealing with the deductibility of the support allowances under the identical Georgia statute expressly left open the question whether the interest thereunder of a widow without minor children was "terminable."

[10] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

\*      \*      \*      \*      \*      \*      \*

(2) for administration expenses,

\*      \*      \*      \*      \*      \*

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

(b) OTHER ADMINISTRATION EXPENSES.—\* \* \* there shall be deducted in determining the taxable estate amounts representing expenses incurred in administering property not subject to claims which is included in the gross estate to the same extent such amounts would be allowable as a deduction under subsection (a) if such property were subject to claims, \* \* \*

of the widow; the filing of the application for a year's support was permissive to her, and not necessary to the complete administration of the estate.

### Issue 4. Residuary Estate Created by Court Decree.

The Superior Court decree declaring paragraph Eighth of decedent's will void for vagueness operated to create an intestacy as to the cash passing under that paragraph. The parties agree that the widow thus receives one-fifth of the residuary estate under the intestacy laws of Georgia. (The dollar amount of such share is not in dispute.) It is also clear that if the widow does have such an interest in decedent's estate, such interest qualifies for the marital deduction under section 2056(a). Respondent's position is not altogether clear and he may well be conceding the existence of such a residue. However, if he is challenging the existence of such residue he must necessarily argue that the Superior Court decree is not binding upon us to the extent that it declared paragraph Eighth of decedent's will void. This would place respondent in the somewhat awkward position of requesting us to treat part of the order as binding (as we have done under Issue 1) but at the same time to disregard another part of the order. We do not pass upon the plausibility of such an approach. Cf. *Estate of Ralph Rainger*, 12 T.C. 483, 496–497 (1949). For, in accord with the authorities cited under Issue 1, we think it clear that the question as to the effectiveness of paragraph Eighth of decedent's will was fairly presented to the Superior Court and that its decision, right or wrong, is here binding upon us.

Accordingly, we hold that the widow received a one-fifth interest in the residuary estate which passed under the intestate laws, and that said interest qualifies under section 2056(a). Petitioner has recognized that the residue must bear the Federal estate tax and that the widow's one-fifth interest therein must bear its pro rata share thereof. The amount of such taxes (to be determined under the Rule 50 computation) will reduce *pro tanto* the widow's share in this residue and will correspondingly diminish the marital deduction allowable for this inheritance.

*Decision will be entered under Rule 50.*