ESTATE OF MARTHA P. BARTBERGER, DECEASED; FROST NATIONAL BANK, INDEPENDENT EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bartberger v. Commissioner
Docket No. 36710-85.
United States Tax Court
T.C. Memo 1988-21; 1988 Tax Ct. Memo LEXIS 24; 54 T.C.M. (CCH) 1550; T.C.M. (RIA) 88021; January 19, 1988; As amended January 20, 1988 Elwood Cluck, for petitioner. Barbara Cavanaugh, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioner's Federal estate tax in the amount of $ 1,465,823.00. The issues the Court must decide are: (1) whether certain real estate is includible decedent's estate, (2) if so, the value of that property, (3) whether special use valuation, section 2032A, [1] may be used to value other includible real estate, (4) whether certain attorneys fees are deductible pursuant to section 2053, and (5) whether unearned oil, gas and mineral delay-rental payments and unearned grazing rental payments plus associated interest, attorney's fees and court costs are deductible pursuant to section 2053. FINDINGS OF FACT Some of the facts are stipulated and are so found. The executor for petitioner is a national banking association *26 having its offices and principal place of business in San Antonio, Texas. Martha Petersen Bartberger died testate in a nursing home in San Antonio, Texas on April 10, 1981 at the age of 101. On the date of her death decedent held record title to the Bart Ranch, which included 7,898.8 acres of land, and to 7,346.97 acres of real estate leased to the Petersen Ranch. Both ranches were located in Southwest Texas. The decedent also owned other assets that have an agreed value of $ 638,836.81. In 1928 N. P. Petersen, decedent's father, owned a partnership interest in Petersen and Company located in Brackettville, Texas. N. P. Petersen also owned the First State Bank in Brackettville. In 1928 Brackettville was the only town in Kinney County, Texas, a ranching community of approximately 1,800 people located near the Mexican border in West Texas. The primary occupation of the community was ranching, and the only big business in town was Petersen and Company. Petersen and Company was a partnership that conducted a general [Text Deleted by Court Emendation] mercantile business whose motto was "supplies from the cradle to the grave." N. P. Petersen owned two of the four partnership *27 shares; R. C. Ballantyne and Adolph A. Bitter each owned one share. The Petersen Ranch included 19,300 acres of land located 7 miles northeast of Brackettville. There were no improvements on the ranch but a portion of the perimeter had been fenced. In 1931, N. P. Petersen, being dissatisfied with the operation of the ranch, fired his manager and hired O. D. "Buster" Dooley as the new ranch manager. He made improvements, raised wool and mohair and counseled Petersen on when the sheep, cows and goats should be sold. Dooley operated the Petersen Ranch as a cattle ranch continuously until his death. Late in 1935, after roundup and shipment of the cattle to market, Dooley came to the office of Petersen and Company to discuss the ranching business with Petersen. Present at that meeting, besides Petersen and Dooley, were Willie Jo Bitter, who married Dooley in 1971 after she was widowed, Willie Jo's husband, Clarence Bitter, the bookkeeper and general manager of Petersen and Company and R. C. Ballantyne, Petersen's business partner and trusted advisor. At this meeting Petersen told Dooley that he approved of his management of the ranch and offered to enter into a partnership with *28 Dooley for the operation of the ranch. Dooley was to stop taking a salary and would pay half of the operating costs of the ranch and receive half of any profits. If Mr. and Mrs. Petersen and their daughter, the decedent, had sufficient funds during their lives, the Petersen Ranch would become Dooley's on the death of decedent. When the meeting concluded, Petersen and Dooley shook hands. The terms of this agreement were never reduced to writing. Dooley made many improvements to the Petersen Ranch including fencing and crossfencing, working pens and shearing sheds, a feed storage barn, an equipment storage building, six wells, windmills, submergible pumps, branch roads, a well house, a two-car garage, a stone house, television reception disc and two concrete block tenant house. These improvements were paid for jointly, under the terms of the 1935 oral agreement. During the 45 years prior to decedent's death, Dooley visibly occupied and was in actual, apparent, visible and exclusive physical possession of the ranch house and related barns, sheds, outbuildings, pens and corrals and all of the pasture land encompassed within the comprising the Petersen Ranch. During this time decedent *29 did not visibly occupy or have actual or apparent possession of the Petersen Ranch. N. P. Petersen died in 1949, and he devised the Petersen Ranch, which at that time included 19,300 acres of improved land, to decedent. Prior to his death, he had given the Bart Ranch to decedent, his only child. On April 24, 1950 the decedent as executrix of her father's estate stated in an Inheritance Tax Affidavit in Kinney County, Texas that "N. P. Petersen had made no gift, grant or conveyance of any property, real or personal * * * to take effect in possession or enjoyment at or after death." In 1950, the decedent, her husband A. E. Bartberger, her cousin Martin Petersen and Dooley entered into a partnership doing business as the Petersen Ranch Company to operate the Petersen Ranch and raise and sell livestock on the ranch. The term of the partnership was five years, renewable upon the agreement of the parties. The fifth article of the partnership agreement, signed by Dooley without objection, recited that the decedent was the fee simple owner of 19,300 acres of the real estate of the Petersen Ranch. The agreement provided that decedent would pay real estate taxes on the acreage, but the *30 partnership would pay taxes on the livestock or on other company property. By separate agreement decedent leased the grazing rights on the 19,300 acres to the partnership. Dooley managed the partnership property and had custody and control of the property under the partnership agreement. The decedent bore the cost of all permanent improvements, and the partnership bore the cost of all other improvements. Decedent held title to all of the land leased to the Petersen Ranch and paid all the school and property taxes on it. The partnership continued until the formation of Petersen Ranch, Inc. in 1962 which succeeded to the operation of the ranching business. In 1963 decedent conveyed 12,426.11 acres of the Petersen Ranch to Martin and June Petersen for life, remainder to the Episcopal Church Corporation of West Texas. Dooley raised no objection to this conveyance, and his consent was not sought. Without Dooley's consent or objection decedent executed oil, gas and mineral leases on the Petersen Ranch between 1950 and 1981. On March 31, 1981 Amoco Production Company paid $ 7,309.85 to decedent for delay rentals for the period April 14, 1981 through April 13, 1982 pursuant to an *31 oil, gas and mineral lease executed by decedent. Consideration for these leases was paid to decedent's personal account. Decedent leased the grazing rights on 7,346.97 acres of the real estate to Petersen Ranch, Inc. from 1962 until her death. On December 29, 1980, Dooley, acting on behalf of the Petersen Ranch, Inc., paid $ 18,367.42 to the decedent under the terms of the grazing lease for the period January 1, 1981 through December 31, 1981. In 1979, Dooley wanted to make additions and improvements to the ranch house on the Petersen Ranch. He did not, however, want to improve the house until he had received assurances that he would be the owner of the real estate after Martha Petersen Bartberger died. Dooley and his second wife Willie Jo visited decedent in her nursing home in San Antonio. They discussed the improvements and additions to the ranch house and decedent's intentions with respect to the real estate leased to Petersen Ranch, Inc. Decedent said, "Ogden, you are the only son I have ever had, and you have no worries about the ranch." Decedent, predeceased by her husband and having no children, devised the real estate that was leased to the Petersen Ranch, Inc. to *32 Dooley, the Bart Ranch to Else Inge Sights and the residue of her estate to Martin Petersen. The expenses and Federal estate taxes of the decedent's estate were to be paid out of the residuary estate. If such property was insufficient to pay these expenses, the balance was to be borne by Dooley and Sights in proportion to the value (as determined for estate tax purposes) of their specific devises. Decedent's executor was fully authorized to take possession, lease, mortgage, sell, exchange or otherwise dispose of any part of decedent's estate including the Petersen Ranch's real estate for the purpose of discharging any indebtedness of the estate. Petitioner timely filed a Federal estate tax return, Form 706. Petitioner valued the Bart Ranch in the gross estate at $ 1,145,326.00 or, alternatively, pursuant to section 2032A at $ 545,326.00. [2] Petitioner valued the real estate leased to the Petersen Ranch at $ 1,000.00, on the ground that Dooley, the sole possessor of the Petersen Ranch, claimed he was the owner of the real estate pursuant to the oral contract entered into in 1935 with N. P. Petersen. *33 In March of 1982, Dooley filed a petition in the 63rd District Court, Kinney County, Texas. In this petition, Dooley asserted his claim of ownership to the Petersen Ranch under the 1935 contract instead of under decedent's will to prevent decedent's executor from taking possession and control of the real estate leased to the ranch and to recover from the executor the unearned portion of the grazing lease paid to decedent by Dooley on behalf of Petersen Ranch, Inc. That court held that title and ownership of the real estate leased to the Petersen Ranch vested in Dooley under decedent's will, not under any prior contract, and that decedent's estate owned the real estate leased to the Petersen Ranch, including all delay rentals received from leases on the ranch. An appeal from this decision is pending in the Fourth Supreme Judicial District, San Antonio. Dooley died in December 1984. His wife Willie Jo and C. J. Bitter as Independent Executors of the Estate of O. D. Dooley are carrying on the action in the Fourth Supreme Judicial District. Elwood Cluck, attorney at law, performed legal services for Dooley with regard to the case filed in the 63rd Judicial District Court, Kinney *34 County, Texas. His fees for that litigation were $ 119,000.00. Mr. Cluck also performed services for petitioner for fees of $ 70,000.00. Irwin Zucker, attorney at law, performed legal services for Else Inge Sights in the amount of $ 13,000.00. OPINION We must first decide whether the Petersen Ranch is includible in the estate of Martha Peterson Bartberger. Petitioner argues that ownership of the ranch vested in Dooley under his oral contract with N. P. Petersen rather than through the specific devise to him under decedent's will. The will of decedent, according to petitioner, had no legal effect and simply confirmed the prior agreement between Dooley and Petersen. Petitioner contends that Dooley, in effect, held a remainder interest in the Petersen Ranch and that decedent's interest in the ranch was not more than a life estate conveyed by N. P. Petersen. Alternatively, petitioner argues that Petersen established an express parol trust whereby Petersen, during his lifetime, and decedent, during her lifetime, agreed to hold legal title to the Petersen Ranch in trust for Dooley as the beneficial and equitable owner of the ranch. In return, Dooley was to carry on the ranching *35 operation and pay a share of the income from it to Petersen and the decedent during their respective lifetimes. Under this theory, the ranch would not be included in decedent's estate because the decedent had no interest in the ranch at the time of her death. As a further alternative argument, petitioner contends that Dooley is the owner of the Petersen Ranch as a result of a constructive trust. This trust allegedly arose out of Dooley's reliance upon the promises, representations and actions of Petersen in carrying on the ranching operation and providing income to Petersen and decedent respectively for a period of 45 years. Section 2033 provides that "the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." We hold that the Petersen Ranch is includible in decedent's estate under section 2033 because at the time of her death decedent owned the ranch in fee simple. Dooley and Petersen's agreement in 1935 was a partnership agreement to share the operating costs and the profits from the ranch. We further believe *36 that in the course of stating their agreement, N. P. Petersen promised that if Mr. and Mrs. Petersen and their daughter, the decedent, had sufficient funds during their lives, the Petersen Ranch would become Dooley's on the death of decedent. The parties, however, did not intend Dooley to have title to, or equitable ownership of, the real estate of the Petersen Ranch prior to the death of decedent. The evidence shows that the 1935 agreement was performed in accordance with its terms. No express parol trust existed, and no constructive trust can be found to vest ownership of the real estate in Dooley. It is clear not only that decedent held title to the Petersen Ranch but also that she could do with the land as she pleased. Dooley, regardless of his privately held beliefs, did not contend otherwise prior to decedent's death. [3] Upon the death of N. P. Petersen the original Petersen Ranch of 19,320.87 acres was devised in fee simple to decedent, under the terms of his will. Decedent, as executrix of her father's estate, had no knowledge of any gift, grant or conveyance of the Petersen Ranch which would take effect after the death of Petersen. Dooley did not contend otherwise prior *37 to decedent's death. In 1950, Dooley entered into a partnership agreement with decedent which explicitly recited that decedent was the fee simple owner of the Petersen Ranch. Dooley signed this agreement without noting any objection. In 1963, decedent conveyed 12,426.11 acres, over half of the real estate of the Petersen Ranch, to Martin and June Petersen for life, remainder to the Episcopal Church Corporation of West Texas. There is no evidence in the record of any objection whatsoever to this transaction by Dooley. Had Dooley been the owner of a legal or equitable interest in the Petersen Ranch, we would have expected some assertion of his interest at that time. The evidence is compelling that N. P. Petersen and Dooley did not intend their agreement to convey ownership of the ranch. We believe that the only permissible inference from the facts in evidence is that decedent held the fee simple interest in the Petersen Ranch at the time of her death. Decedent paid all school and property taxes on the *38 land to which she held title. She executed oil, gas and mineral leases on the Petersen Ranch between 1950 and 1981. Consideration for these leases was paid into the decedent's personal account without claim from Dooley until after decedent's death. Under the partnership agreement of the Petersen Ranch Company executed by decedent, Dooley and others, decedent leased her land to the Petersen Ranch Company from 1950 until her death. She was also to bear the cost and expense of all permanent improvements to the land. Indeed, Dooley recognized and respected the decedent's ownership of the Petersen Ranch. In 1979, prior to Dooley's improving the ranch house on the Petersen Ranch, he visited decedent at her nursing home in San Antonio to discuss his intended improvements. He made the improvements only after receiving assurances from decedent that she would devise the ranch to him, which she did. On these facts it is evident that decedent was the fee simple owner of the Petersen Ranch; that she devised ownership of the ranch to Dooley; and that Dooley was aware of the decedent's rights of ownership. The 1935 agreement did not, and was not intended to affect ownership of, or title to, *39 the real estate of Petersen Ranch. Petitioner's arguments that an express parol trust or a constructive trust arose out of such a contract must, therefore, fail. We hold that decedent was the sole owner of the Petersen Ranch at the time of her death and consequently the ranch is includible in her estate at its fair market value on the date of her death. Section 2033. We must next decide the fair market value of the Petersen Ranch on the date of decedent's death. The standard to be applied is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Section 20.2031-1(b), Estate Tax Regs. Several experts testified during trial as to the value of the Petersen Ranch. One such expert, John R. West, is a Texas attorney and owns a title company operating in two counties. Upon being advised that O. D. Dooley was in possession of the Petersen Ranch, West testified that any title insurance policy on the Petersen Ranch he would include an exception *40 for the rights of parties in possession. He further stated that the claims to title and possession of the Petersen Ranch asserted by Dooley would substantially affect the price a buyer would be willing to pay for the Petersen Ranch. West estimated that the value of the ranch would be diminished by at least 50 percent because of the claims of Dooley. James L. Drought testified for petitioner as to the value of the land. As an attorney with 18 years experience in real estate litigation, he testified that the fair market value of the Petersen Ranch subject to the claims of Dooley was approximately 50 percent of the value of the property free and clear of the claims of Dooley. Fred Wells, an appraiser with Vine and Associates, San Antonio, Texas and formerly a loan officer and Chief Executive Officer of Southwest Federal Land Bank Association in Devine, Texas, testified that Dooley's claims to the Petersen Ranch materially affected the marketability of the ranch. He further testified that because of these claims the fair market value of the Petersen Ranch on the date of death of the decedent was $ 100,000.00 to $ 150,000.00, although in his expert report the witness stated that the *41 fair market value of the land was $ 320,000.00 taking into account Dooley's claims. Respondents expert, Glenn A. Walters, appraised the Petersen Ranch using the Cost Approach, Income Approach and the Market Data Approach. Following respondent's instructions, Walters assumed that the title to the Petersen Ranch was marketable according to respondent's instructions notwithstanding Dooley's claims to ownership of the ranch. Walters concluded that the fair market value of the Petersen Ranch on the date of death of decedent was $ 1,873,500.00. We find respondent's expert's valuation of the Petersen Ranch unpersuasive. The expert's testimony reveals that his methods were arbitrary and unrealistic. The expert chose as comparables sales of property that occurred well after the date of decedent death. Some of these transactions included unusual terms which the expert neither researched nor took into account when making his valuation. Furthermore, the expert made his valuation on the assumption that the Petersen Ranch had good and marketable title. This assumption is unrealistic in light of Dooley's claims to title and possession of the ranch. We also find that petitioner's expert *42 Fred Wells was unrealistic in valuing the Petersen Ranch at $ 100,000.00 to $ 150,000.00. Although we agree that the claims of Dooley to title and possession affected the fair market value of the ranch, we cannot accept as fact an assertion that the claims reduced the value of the ranch as dramatically as petitioner's expert claims. Based on the facts we have before us, we find that the fair market value of the real estate that was leased by the Petersen Ranch at the time of decedent's death was $ 1,000,000.00. The parties have stipulated that the Bart Ranch will be valued under section 2032A if the applicable percentage requirements, sections 2032A(b)(1)(A) and (B), are met. Because of our holding with regard to the value of the Petersen Ranch, the Bart Ranch does not meet the percentage requirements of section 2032A and thus does not qualify for the Special Use Valuation. The next issue we must decide is whether petitioner is entitled to a deduction under section 2053 for attorney's fees to Irwin Zucker for legal services rendered to Mrs. Else Inge Sights and for attorney's fees to Elwood Cluck for legal services rendered in Dooley's state court litigation against the executor *43 of decedent's estate. Section 2053 allows a deduction for attorney's fees from a decedent's gross estate as an administrative expense if the fees were "actually and necessarily incurred in the administration of the decedent's estate * * *." Section 20.2053-3(a), Estate Tax Regs. An attorney's fee is not deductible if the attorney is performing services for the benefit of an individual beneficiary rather than for the estate. Section 20.2053-3(c)(3), Estate Tax Regs. Petitioner claims that the attorney's fees charged by Elwood Cluck to O. D. Dooley for legal services rendered in Dooley's suit against the executor of decedent's estate are deductible because they were incurred in conjunction with the determination of decedent's gross estate and petitioner's estate tax liability. Petitioner further contends that attorney's fees applicable to the legal services rendered by Irwin Zucker to Mrs. Else Inge Sights were also incurred in the administration of decedent's estate and therefore deductible. We hold that the attorney's fees charged by Elwood Cluck for his legal work in Dooley's state court *44 case are not deductible under section 2053. We also hold that the fees charged by Irwin Zucker to Else Inge Sights are deductible by decedent's estate under section 2053. Dooley's attorney's fees were charged by Mr. Cluck for legal work rendered in state court litigation against the executor of the decedent's estate. Dooley's object in carrying on that litigation was to persuade the state court to hold that the Petersen Ranch had passed to Dooley under an alleged oral contract rather than through the will of the deceased. Such a holding would prevent the executor of decedent's estate from taking possession of, leasing, mortgaging, selling, exchanging or otherwise disposing of the land to pay the debts of decedent, the expenses of administration or the taxes assessed against the estate. Furthermore, the estate would lose the benefit of the unearned rents paid to decedent. These legal expenses incurred by Dooley were solely for his individual benefit and not essential to the proper settlement of decedent's estate. Dooley's interests in the litigation were directly opposed to the interests of decedent's estate. Consequently, the fees applicable to this state court litigation are *45 not deductible. Estate of Landers v. Commissioner,38 T.C. 828 (1962). The legal fees charged by Irwin Zucker to Else Inge Sights, a beneficiary of decedent's estate, were applicable to the preparation of the petition to this Court, the preparation of leases of the ranch property which would be allowed under section 2032A, the preparation of stipulations, the preparation for trial in this Court, and conferences with the Internal Revenue Service. These fees paid by Else Inge Sights are expenses actually and necessarily incurred in the administration of decedent's estate. Section 20.2053-3(a), Estate Tax Regs.; Estate of Reilly v. Commissioner,76 T.C. 369 (1981); Porter, Transferee v. Commissioner,49 T.C. 207 (1967). Therefore, they are deductible under section 2053. The final issue the Court must address is whether petitioner is entitled to a deduction under section 2053 for unearned delay rentals claimed by Dooley plus interest, attorney's fees and court costs arising out of such rentals. On December 29, 1980, Dooley acting on behalf of the Petersen Ranch, Inc., paid $ 18,367.42 to the decedent lessor for a grazing lease *46 for the year of 1981. On March 31, 1981, Amoco Production Company paid $ 7,309.85 to decedent for an oil, gas and mineral lease for a year beginning April 14, 1981. In his suit against the executor of decedent's estate, Dooley claimed the unearned balance of these leases. Petitioner contends that it is entitled to a deduction under section 2053(a)(3) for the unearned rentals accruing under the grazing lease and the oil, gas and mineral lease for the period after decedent's death. Section 2053 allows a deduction for claims against decedent's estate if those claims are personal obligations of the decedent existing at the time of decedent's death and are enforceable against the estate. Section 20.2053-4, Estate Tax Regs. Decedent was not obligated in any way to pay the unearned rental payments to Dooley. Dooley's ownership of the ranch is derived from his status as a beneficiary under the decedent's will, which is subject to the outstanding leases on the Petersen Ranch. Because there is no personal obligation of the decedent's estate to pay to Dooley the unearned portion of rents attributable *47 to the oil, gas and mineral lease and the grazing lease, petitioner is not entitled to a deduction under section 2053 for unearned delay rentals claims by Dooley plus interest, attorney's fees and court costs arising out of such rentals. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. ↩
2. It is stipulated and agreed that the fair market value of the Bart Ranch for the purposes of estate tax valuation is $ 1,137,600.00. ↩
3. Mrs. Dooley testified that her husband "always felt like" he was the full owner of the Petersen Ranch. The ranch was known in the community as the "Buster" Dooley Ranch. ↩